**UNITED STATES v. ZISBLATT FURNITURE CO., Inc., et al.**

District Court, S. D. New York.

June 3, 1948.

John F. X. McGohey, U. S. Atty. for Southern District of New York, of New York City (Harold J. McAuley, Asst. U. S. Atty., of New York City, of counsel), for United States.

Nathan April, of New York City, for defendant Morris Zisblatt.

LEVIN, District Judge by designation.

The defendant, Morris Zisblatt, an officer of Zisblatt Furniture Company, Inc., indicted together with others not yet brought to trial, was tried to a jury and convicted of the charge in an indictment filed on August 3, 1945, that he did in violation of Title 11 U.S.C.A. § 52, sub. b, "unlawfully, wilfully, knowingly and fraudulently conceal from the trustee of the Estate of Zisblatt Furniture Company, Inc., assets in the form of money or property or both * * *."

The court is confronted by three motions made by the defendant, Morris Zisblatt:

1. Before trial, upon the conclusion of the Government's case and then again after verdict, the defendant moved for a dismissal of the indictment upon the ground that the prosecution is barred by the statute of limitations embraced in Sec. 29, sub. d of the Bankruptcy Act, Title 11 U.S.C.A. § 52, sub. d.

2. Upon conclusion of the Government's case, the defendant moved for dismissal of the indictment upon the ground that the alleged offense was committed without the territorial jurisdiction of the court.

3. Upon conclusion of the Government's case and again after verdict, the defendant moved for acquittal on the ground that the evidence was inadequate to sustain the charges.

The court grants the motion to dismiss the indictment upon the first ground, and therefore finds it unnecessary to consider the other motions.

The concealment of assets is alleged to have taken place "from on or about the 1st day of January, 1940, and continuously thereafter down to and including the time of the filing of the indictment." The petition in bankruptcy was an involuntary one and was filed on June 7, 1940. The corporation was adjudicated a bankrupt on June 10, 1940, and a trustee was appointed and qualified on July 2, 1940.

Under the Bankruptcy Act of 1898, it was provided that no prosecution for an offense committed thereunder could be had more than one year after the commission of the offense. In 1926, the Bankruptcy Act was made to conform to the general statute and a three-year limitation was substituted, thus providing for greater uniformity of legislation in the matter of limitations, but there had been confusion as to when the statute of limitations for the crime of concealment of assets commenced to run, and in 1938, by amending Section 29, sub. d of the Bankruptcy Act, supra, Congress sought to remove the confusion. This section as amended reads:

"A person shall not be prosecuted for any offense arising under this title unless the indictment is found or the information is filed in court within three years after the commission of the offense: Provided, That the offense of concealment of assets of a bankrupt shall be deemed to be a continuing offense until the bankrupt shall have been finally discharged, and the period of limitations herein provided shall not begin to run until such final discharge."

Sec. 14, sub. a (11 U.S.C.A. § 32, sub. a), of the Bankruptcy Act, concerning the granting of discharges, states:

"The adjudication of any person, except a corporation, shall operate as an application for a discharge: Provided, That the bankrupt may, before the hearing of such application, waive by writing, filed with the court, his right to a discharge. A corporation may, within six months after its adjudication, file on application for a discharge in the court in which the proceedings are pending."

The bankrupt corporation in this case never applied for a discharge, and the last day upon which its petition could have been filed was December 9, 1940.

The Government contends that the failure of the corporation to obtain a discharge has the effect of depriving the de-

fendant, Morris Zisblatt, of the benefits of the three-year statute of limitations, which would otherwise be available to him if a discharge had been procured by the bankrupt corporation. In other words, it is contended that the event which initiates the running of the three-year period not having occurred, and there having been no possibility at the time the indictment was filed that it ever could occur, there is no statute of limitations for the crime of which this defendant is accused.

At common law there were no fixed periods for the commencement of suits and it frequently has been stated that limitations of time for the bringing of an action are creations of statute. While there was no general statute of limitations with respect to personal actions until the seventeenth century, pleas of limitations in criminal and real actions had been permitted for centuries. The courts were strict about the timeliness of a proceeding upon the theory that after a long lapse of time in criminal cases, proof of guilt or innocence would be extremely difficult to establish, and in civil actions a presumption was raised that if the claimant made no assertion of his rights within a reasonable time, the obligation had been paid or discharged.

 Statutes of limitation have long been favored by the law and where any doubt exists they should be liberally construed in favor of the defendant in a criminal case. See People v. Lord, 12 Hun, N. Y., 282, holding:

"A statute limiting the time within which indictments must be found is a surrender by the State of its right to try and punish criminal offenses at its discretion without limit as to time. It is therefore an act of grace and favor which is to be liberally construed where construction is required, in favor of the criminal."

In State v. Asbury, 26 Tex. 82, on a question of the interpretation of a statute of limitations, the court said:

"Such a construction should be given as will operate most to the ease of the party entitled to favor."

The court said in Commonwealth v. Haas, 57 Pa. 443:

"Astuteness must not be employed to narrow or take away a defense granted by law to a party accused of crime."

 Generally, where the language of the statute is plain and unambiguous, courts will give it a literal interpretation. This general principle, however, may be subject to qualification. In construing a statute of limitations, it is permissible to consider the reasonableness of the result reached by one interpretation and the effect of a different interpretation.

Such considerations were before the court in Cabell v. Markham, 2 Civ., 148 F.2d 737, 739. Judge Learned Hand, in rejecting the argument that the court was not free to depart from the literal meaning of the words in a statute, "however transparent may be the resulting stultification of the scheme or plan as a whole," wrote as follows:

"Courts have not stood helpless in such situations; the decisions are legion in which they have refused to be bound by the letter, when it frustrates the patent purpose of the whole statute. (citing cases). As Holmes, J., said in a much-quoted passage from Johnson v. United States, 1 Civ., 163 F. 30, 32, 18 L.R.A., N.S., 1194: 'it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before.' Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

The policy of limiting the time within which to institute prosecutions for crimes has been adhered to by Congress since the beginning of our Government. In 1790 a general statute of limitations for noncapital offenses against the United States was enacted providing for a two-year period. (Act April 30, 1790, c. 9 Sec. 32, 1 Stat.

119.) This statute was amended by the Act of April 13, 1876, changing the limitation to three years. The present statute (18 U.S.C.A. § 582) provides for a general three-year period applicable to noncapital offenses.

■ Section 29, sub. d, deals with statutory crimes and, therefore, is to be liberally interpreted in favor of repose. United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 417, 76 L.Ed. 917. In that case, in construing the proviso in the statute of limitations which was part of the Internal Revenue Code, the court said:

"The concluding clause of the section, though denominated a proviso, is an excepting clause and therefore to be narrowly construed."

It was said by Mr. Justice Stone in United States v. Katz, 271 U.S., 354, 362, 46 S.Ct. 513, 516, 70 L.Ed. 986:

"General terms descriptive of a class of persons made subject to a criminal statute may and should be limited, where the literal application of the statute would lead to extreme or absurd results, and where the legislative purpose gathered from the whole act would be satisfied by a more limited interpretation."

■ The question arises in this case whether one charged with the crime of concealing a corporation's assets may be deprived of the benefit of the statute of limitations by the failure of the corporate bankrupt to seek and procure a discharge. It should be noted, to begin with, that an individual may be charged with concealing assets in a corporate bankruptcy and be utterly powerless to cause the bankrupt corporation, in whose continued existence as a legal or business entity no one has any interest, to take steps to procure a discharge. In such a case, according to the Government, the statute of limitations never begins to run in his favor and he is subject to prosecution for the rest of his life and whenever the prosecuting officers choose to institute proceedings. If, however, an individual bankrupt himself has concealed assets, he may procure his discharge and may then be charged with his crime only if proceedings are set in motion within three years thereafter. Is this the proper construction to be placed upon Section 29, sub. d.?

The literal interpretation of the statute urged by the Government would result in depriving this defendant of the benefit of the limitation therein set forth, but it is said that such a statute is entirely a matter of Congressional grace, and that Congress has the right to discriminate between individuals similarly situated. Congress, by Section 29, sub. d, expressly created a statute of limitations applicable to all the offenses against the bankruptcy law. Did Congress intend to make the incidence of criminal liability on persons similarly situated vary on the basis of a general rule of statutory construction? Did Congress, in a case where the defendant is not himself the bankrupt and therefore unable to initiate or urge the consideration of an application for discharge, intend to assess a degree of guilt to the offense of concealment of assets not at all referable to the original crime, and by construction place it in the category of a capital offense with respect to the operation of the statute of limitations?

For over 150 years it has been the public policy of the United States, as revealed by the enactments of Congress, to limit the time within which to institute criminal proceedings in noncapital cases. Nowhere does it appear that, in attempting to eliminate confusion as to the time when the statute begins to run in cases of concealment of assets, Congress intended to depart from its long established policy in criminal cases. There is nothing to indicate that it was intended to deprive any individual of the benefit of the general statute of limitations contained in Section 29, sub. d. This court will not lightly assume that Congress intended to place this defendant in the category of a defendant in a capital case with respect to the statute of limitations by applying a general rule of construction. Such an intention ought to be manifested in a clear and unequivocal manner, especially where the door is open for reasonable minds to differ upon the construction of the statute. See United States v. Fraidin, D. C., 63 F.Supp. 271.

This court is bound to read Section 29, sub. d, so as to effectuate the intent of

Congress within the framework of established public policy and not to sacrifice that policy to the literal force of the language used. Accordingly, the court holds that the defendant is entitled to all the benefits of the statute and that the limitation of three years from the commission of the offense within which to bring prosecution, as set forth in the portion of the section immediately preceding the proviso applies in this case.

The question under consideration has previously been considered by other district courts and there is a conflict among them as to the interpretation of Section 29, sub. d. Compare United States v. Newman, D. C., 63 F.Supp. 269, and United States v. Nazarro, D. C., 65 F.Supp. 456, both decided in this district, and United States v. Ganaposki, 72 F.Supp. 982, decided by the District Court for the Middle District of Pennsylvania, with United States v. Fraidin, supra, decided by the District Court for the District of Maryland. The court has come to its conclusion only after the most careful consideration of the contrary rulings by judges in this district.

An order dismissing the indictment as to Morris Zisblatt may be presented, and in the event of an appeal, pending the prosecution and determination of such appeal, he shall be admitted to bail on his own recognizance, Title 18 U.S.C.A. § 682, as amended.