UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank GUGLIELMINI, Defendant-Appellant.

No. 635, Docket 34311.

United States Court of Appeals,
Second Circuit.

Argued March 25, 1970.

Decided April 27, 1970.

William T. Murphy, Atty., Dept. of Justice, Washington, D. C. (Edward R. Neaher, U. S. Atty., for the Eastern District of New York, and Denis Dillon, Special Atty., for the Dept. of Justice, on the brief), for appellee.

Jerome Lewis, New York City (H. Elliot Wales, New York City on the brief), for appellant.

Before LUMBARD, Chief Judge, HAYS, Circuit Judge, and BLUMENFELD, District Judge.*

LUMBARD, Chief Judge:

Frank Guglielmini appeals his conviction by a jury in the Eastern District of New York on two counts of an indictment which charged concealment of a bankrupt's assets from his receiver and from his creditors in violation of 18 U. S.C. § 152. The assets were concealed while Frank managed the failing Miracle Supermarket for his brother, John Guglielmini, bankrupt owner of the supermarket.

The appellant does not question the sufficiency of the proof as to him, which was substantially the same as that we found ample to support his first conviction on this charge, which we reversed on other grounds. 384 F.2d 602, 604 (2 Cir.1967).

Guglielmini attacks his second conviction on two grounds: first, that he was denied a fair trial by the government's failure to establish a prima facie case against his co-defendant, Frank Testa, coupled with the subsequent use of Testa's grand jury testimony to impeach him when, after having been acquitted by direction of the court, Testa was called as a defense witness; and second, that the statute of limitations barred the prosecution. We find no error and affirm the conviction.

It is claimed by the appellant, and was conceded by the government at argument, that the prosecutor chose not to present at the second trial certain evidence against Testa which had been presented at the first trial. Instead, the prosecutor elected to withhold certain documentary evidence which would have tended to establish Testa's complicity in the running of the supermarket with Frank Guglielmini at the time the concealment of assets was allegedly effected.

There would be no point in our second-guessing what the government might have done in presenting its case against Testa. Whether the conduct of that part of the case was ill-advised or less than competent is outside any proper complaint which Guglielmini can make. So long as there was sufficient evidence to sustain his own conviction, he cannot complain that the government could have made out a stronger case against his co-defendant which might

---

* Sitting by designation.

have improved his own chances with the jury.[1]

■ Testa's acquittal by the court set the stage for Guglielmini's major objection to the conduct of the trial. At the beginning of the trial, Testa's counsel had questioned the anticipated use of Testa's grand jury testimony. When the prosecutor represented to the trial judge that he would not use that testimony, the matter was dropped.

Guglielmini apparently saw in Testa's acquittal the opportunity to use Testa as a defense witness. But although he claims on appeal that Testa was called to testify in the belief that the government would be barred from using Testa's grand jury testimony on cross-examination, the government used that testimony to impeach Testa only after the trial judge ruled that once Testa was no longer a defendant in the case, the government was free to use his grand jury testimony. We agree with the trial judge.

The government's representation before trial concerning its intention not to use the grand jury testimony could refer only to its potential use as part of the government's direct case. But once the case against Testa was ended by his acquittal, which the government certainly could not have foreseen before the court so ruled at the conclusion of the government's case, the reasons for barring use of the testimony no longer existed. Any claim of infirmity in Testa's grand jury minutes was available only to Testa. It follows that when Testa was called to the stand by Guglielmini, it was altogether proper to allow the government to show the jury that on a prior occasion, when Testa had been under oath, he had sworn to a somewhat different version of the roles he and Guglielmini had played in the operation of the supermarket.

On direct examination, Testa told the jury, as he had at the first trial, that he had managed the store, signed checks, received cash, and was responsible for the supermarket's financial operations. Naturally, this testimony would have aided Guglielmini considerably if it remained unimpeached. Testa had told the grand jury, however, that he had run the business for John Guglielmini until Frank Guglielmini came into the picture and that he exercised no control after that time. The effect of that testimony was to put appellant in sole control of the supermarket during the crucial period when assets were being concealed.

A holding that grand jury testimony could not be used to contradict a witness' trial testimony on these facts would mean that Testa would have had a license to testify to anything without fear of contradiction and despite his prior sworn statement to the contrary. If the government did err in failing to give Testa proper warnings before his grand jury appearance, it was a sufficient remedy of that wrong that the government was barred from using the minutes to incriminate Testa. No proper purpose would be served in holding that the minutes were also unavailable to the government when they became relevant to impeach Testa's credibility on a critical factual matter. On the contrary, to forbid use of the grand jury minutes would only serve to impede the search for the truth.

■ Appellant's second argument is that the prosecution of this indictment, filed June 2, 1966, was barred by the statute of limitations, 18 U.S.C. §§ 3282, 3284. Judge Dooling held that the period of limitation began to run on February 7, 1962, when the order of the referee in bankruptcy held that the bankrupt, John Guglielmini, had waived his

---

1. Of course, if the trial judge had denied Testa's motion for an acquittal, or even had reserved judgment, Testa would still have been a defendant and could have testified only on his own election. And if he had testified as a defendant, it is unlikely he would have colored his testimony so as to assist Guglielmini's defense, as he could safely do after his own acquittal.

right to a discharge and accordingly the indictment was timely filed within five years of that date. We agree with the district court.

Several creditors of the Miracle Supermarket filed an involuntary petition in bankruptcy on April 1, 1960. A receiver was appointed that day. John Guglielmini, doing business as the Miracle Supermarket, was adjudicated a bankrupt on September 28, 1960, an action which constituted an automatic application for a discharge under the Bankruptcy Law, 11 U.S.C. § 32(a). The receiver was appointed trustee of the bankrupt estate, which was ordered to file bankruptcy schedules by October 3, 1960. It does not appear any schedules were ever filed.

On January 24, 1962 the trustee moved for an order that the bankrupt had waived his right to a discharge. He alleged there had been a first meeting of creditors, but there were numerous adjournments and the bankrupt had failed to appear on several occasions. The bankrupt not having opposed the motion, the referee on February 7, 1962 ordered that the bankrupt had waived his right to a discharge. We think that date must be used to measure the period of limitation.

The five year general statute of limitations, 18 U.S.C. § 3282, is tolled for a charge of concealing assets of a bankrupt until the bankrupt obtains a "final discharge or denial of discharge." 18 U.S.C. § 3284. The problem here is that while the Bankruptcy Law, 11 U.S.C. § 32, provides for discharge, denial of discharge, or *waiver of discharge*, Congress failed to provide expressly for tolling the statute where, as in this case, there is a waiver of discharge.

Appellant argued (1) that the tolling provision does not apply to this situation since there was neither a discharge nor a denial of discharge; (2) that the toll-

ing provision should not apply to a concealment case where the defendant is not the bankrupt; and (3) that if the tolling provision does apply, the period of limitation should have run from October 3, 1960, when the bankrupt failed to file schedules as ordered and thereby exposed himself to a finding of waiver. Judge Dooling rejected these arguments and, conceding the law was not clear in the case of a non-bankrupt defendant, ruled that the period of limitations ran from February 7, 1962 because the finding of waiver had the same effect as a denial. We agree.

We reject appellant's first argument because consideration of the 1948 amendments to 18 U.S.C. § 3284 convinces us that Congress could not have intended to exclude waivers of discharge from the tolling provision. On the contrary, a waiver of discharge was intended to have the same effect as a denial.

In 1945, six men had been prosecuted for concealment of assets in the District of Maryland. At that time, the statute governing the period of limitation read: "* * * concealment of assets * * * shall be deemed to be a continuing offense until the bankrupt shall have been finally discharged, and the period of limitation * * * shall not begin to run until such final discharge." Because there had never been an application for a discharge, and the time to apply for a discharge had expired,[2] the trial court faced a situation where the statute of limitations would never run under the strict wording of the tolling section, since there was no longer a possibility of "final discharge." The district court held that the intent of Congress could be followed only by reading the tolling provision as if the words "or until denial thereof" were appended to "final discharge." United States v. Fraidin, 63 F.Supp. 271, 285 (D.Md.1945). Congress subsequently closed the statutory

---

2. In 1945, bankrupt individuals and corporations had to make formal applications for discharge. Subsequently, 11 U.S.C. § 32(a) was amended so that, in the case of an individual, adjudication of bankruptcy operates automatically as an application for a discharge.

gap by amending the tolling provision as the court in *Fraidin* had construed it. As *Fraidin* itself involved a waiver, rather than a denial, of discharge, it is clear to us that Congress intended a waiver to have the same effect as a denial for the purpose of calculating the period of limitation.

■ Appellant's second point merits little discussion. The argument appears to be that since appellant was not the bankrupt, and therefore had no control over the bankruptcy procedure which would have caused the statute of limitations to start running, the tolling provision does not apply to him. But concealment of assets is a crime even when, as here, the defendant is not the bankrupt. We see no reason why a defendant who is not a bankrupt should be in a better position than a defendant who is the bankrupt with regard to the tolling provision.

■ Finally, appellant argues that the period of limitation should be calculated from the date the bankrupt's action (or here, his inaction) exposed him to a finding that he had waived discharge. Presumably, the date for calculation under this theory would be October 3, 1960, when the bankrupt failed to file schedules. We disagree. In *Fraidin*, the court looked to the date when discharge was barred as a matter of law. *Supra*, at 284. We follow that approach and note that the only action in this case which irrevocably barred discharge was the order of waiver on February 7, 1962.

Appellant's reliance on Rudin v. United States, 254 F.2d 45 (6th Cir.), cert. denied, 357 U.S. 930, 78 S.Ct. 1374, 2 L. Ed.2d 1371 (1958), is misplaced and, in our view, works against his argument. In *Rudin*, a corporation was adjudged bankrupt in January, 1950. When it failed to apply for a discharge within the six months allowed under 11 U.S.C. § 32(a), it was deemed to have waived discharge as of July 1950 and the period of limitation was held to run from that date. Appellant argued that *Rudin* supports the proposition that the period of limitation should be measured from the *acts* giving rise to the waiver, *e. g.*, the failure to file schedules in October, 1960. But the government properly points out that *Rudin* is more consistent with the view that the period of limitation runs from the date of the event when discharge becomes impossible and, as we noted above, that event in the instant case was the finding of waiver on February 7, 1962.

Judgment affirmed.