**PUBLISH**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

--------------------------------------------

## No. 97-2208

--------------------------------------------

**D. C. Docket No. 3:96-CR-47-LAC**

**UNITED STATES OF AMERICA,**

                             **Plaintiff-Appellee,**

**versus**

**RICHARD L. GILBERT,**

                             **Defendant-Appellant.**

----------------------------------------------------------------

**Appeal from the United States District Court
for the Northern District of Florida**

----------------------------------------------------------------

**(March 18, 1998)**

**Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.**

EDMONDSON, Circuit Judge:

Defendant Richard Gilbert appeals his conviction for concealing assets of a bankrupt's estate, in violation of 18 U.S.C. § 152.[1] Defendant challenges the district court's failure to dismiss the indictment

---

[1] 18 U.S.C. § 152 provides, in relevant part, that "[a] person who . . . knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor . . . shall be fined under this title, imprisoned not more than 5 years, or both."

2

as barred by the Statute of limitations.[2]

We agree with Defendant. Thus, we reverse the conviction.

## Background

---

[2] Defendant also argued, among other things, that the indictment should have been dismissed due to pre-indictment delay; that insufficient evidence existed upon which a jury could have based the guilty verdict; and that the district court improperly determined Defendant's sentence.

Defendant was the president and sole stockholder of Corporate Air Limited, Inc. ("CAL"). In 1985, CAL contracted to purchase a piece of real estate called Robinson Island. Before the sale of Robinson Island to CAL was final, Defendant formed a second corporation to take title to the property. The second corporation was Isle of Fantasy, Inc. ("IOF"). IOF paid for Robinson Island using funds received from CAL. The funds

4

provided by CAL represented either loans to IOF or an interest in Robinson Island to be held by CAL.

In 1987, CAL filed a petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The petition included the necessary schedules of CAL's assets. No interest in connection with Robinson Island was disclosed.

On 1 December 1987, CAL had the bankruptcy petition converted from

Chapter 11 (reorganization) to Chapter 7 (liquidation). A bankruptcy trustee was appointed, and eventually the existence of Robinson Island, and CAL's interest,[3] was discovered.

Defendant was indicted in July 1996 for concealing assets of the bankrupt's estate: CAL's interest in Robinson Island. Defendant moved to dismiss the

---

[3]Defendant disputes that an interest existed in Robinson Island. For our purposes, we can assume that such an interest did exist.

indictment as barred by the statute of limitations. That motion was denied. Defendant was convicted of concealing assets of the bankrupt's estate.

## Discussion

The general statute of limitations for noncapital offenses is five years. See 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no

person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."). The parties do not dispute that this five-year limitations period applies to the offense of concealment of assets. Instead, the dispute is about when the time began to run.

We review the district court's interpretation and application of the statute of limitations de novo. See Grayson v. K Mart Corp., 79 F.3d 1086, 1105 (11th Cir. 1996) (interpretation of statute is question of law reviewed de novo); Morris v. Haren, 52 F.3d 947, 949 (11th Cir. 1995) (same).

"Statutes of limitations normally begin to run when the crime is complete." Pendergast v. United States, 63 S.Ct. 268,

9

271 (1943). But some offenses are considered continuing offenses: offenses which are not complete upon the first illegal act, but instead continue to be perpetrated over time.[4] Offenses should not be considered continuing unless "the explicit language of the ... statute compels

---

[4]A continuing offense is the "[t]ype of crime which is committed over a span of time as, for example, a conspiracy. As to period of statute of limitation, the last act of the offense controls for commencement of the period. . . ." Black's Law Dictionary 291 (5th ed. 1979).

such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing [offense]." *Toussie v. United States*, 90 S.Ct. 858, 860 (1970).

Congress has explicitly recognized concealment of assets as a continuing offense: "The concealment of assets of a debtor in a case under title 11 [bankruptcy] shall be deemed to be a <u>continuing offense</u> until the debtor shall have been finally

11

discharged or a discharge denied, and <u>the period of limitations shall not begin to run until such final discharge or denial of discharge.</u>" 18 U.S.C. § 3284 (emphasis added). So, not only has Congress expressed that concealment is a continuing offense, Congress has also specified when that continuing offense shall be deemed complete for limitations purposes.

"Statutes of limitations, both criminal and civil, are to be liberally interpreted in

favor of repose." United States v. Phillips, 843 F.2d 438, 443 (11th Cir. 1988); See also United States v. Marion, 92 S.Ct. 455, 464 n.14 (1971). The Supreme Court has addressed what a court should consider when determining when the statute of limitations begins to run:

> In deciding when the statute of limitations begins to run in a given case several considerations guide our decision. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those

acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

Toussie, 90 S.Ct. at 860. When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant.

14

See United States v. Habig, 88 S.Ct. 926, 929 (1968). With these thoughts in mind, we turn to the case before us.

Section 3284 provides that the limitations period begins when the debtor is discharged or denied discharge. CAL, as a corporate debtor, potentially could have received discharge under Chapter 11. See 11 U.S.C. § 1141(d)(1)(A) ("Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the

confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . ."). But when CAL converted from Chapter 11 to Chapter 7, discharge was no longer possible. Under Chapter 7, a corporate debtor cannot be discharged. See 11 U.S.C. § 727 ("The court shall grant the debtor a discharge, unless . . . the debtor is not an individual . . . .").

The government argues that, because discharge (and therefore denial of

discharge) is no longer possible for CAL, the statute of limitations never will begin to run. This view would place the offense of concealment of assets in the same category as capital offenses, the extraordinary offenses for which no limitation exists. We cannot agree that Congress intended that result.

Congress last amended 18 U.S.C. § 3284 in 1948. The amendments were in response to an asset concealment case,

*United States v. Fraidin*, 63 F. Supp. 271 (D.Md. 1945), and are discussed in *United States v. Guglielmini*, 425 F.2d 439 (2d Cir. 1970):

> In 1945, six men had been prosecuted for concealment of assets in the District of Maryland. At that time, the statute governing the period of limitation read: "* * * concealment of assets * * * shall be deemed to be a continuing offense until the bankrupt shall have been finally discharged, and the period of limitation * * * shall not begin to run until such final discharge." Because [in *Fraidin*] there had never been an application for a discharge, and the time to apply for

a discharge had expired, the trial court faced a situation where the statute of limitations would never run under the strict wording of the tolling section, since there was no longer a possibility of "final discharge." The district court held that the intent of Congress could be followed only by reading the tolling provision as if the words "or until denial thereof" were appended to "final discharge." . . . Congress subsequently closed the statutory gap by amending the tolling provision as the court in _Fraidin_ had construed it. As _Fraidin_ itself involved a waiver, rather than a denial, of discharge, it is clear to us that Congress intended a waiver to have the _same effect as a denial_ for the purpose of calculating the period of limitation.

_Guglielmini_, 425 F.2d at 442-43 (emphasis added) (footnote omitted).

"While there is little recent case law on this issue, several courts have extended the statute of limitations under Section 3284 to events that have the same effect as denying a discharge of the bankrupt." _United States v. Dolan_, 120 F.3d 856, 867 (8th Cir. 1997) (citing _Guglielmini_, 425 F.2d at 443; _Rudin v. United States_, 254 F.2d 45,

47 (6th Cir. 1958); *United States v. Zisblatt Furniture Co.*, 78 F. Supp. 9, 12-13 (S.D.N.Y. 1948)). Courts addressing this issue have determined that, where discharge is no longer possible, the date upon which the discharge became impossible is the date upon which the statute of limitations begins to run. In other words, the limitations period should begin when an event occurs that has the same effect as the denial of discharge. Events which have

been held to have the same effect as denial of discharge include the voluntary dismissal of bankruptcy proceedings, the waiver of discharge, and the failure to file timely for discharge. *See* Guglielmini, 425 F.2d at 443; Rudin, 254 F.2d at 47; Zisblatt Furniture Co., 78 F. Supp. at 12-13; *cf.* Winslow v. United States, 216 F.2d 912, 915 (9th Cir. 1954) (because power to apply for discharge remained with defendant, statute of limitations did not begin to

run until application for discharge or denial of discharge).

Considering the alternative interpretation offered by the government, that no statute of limitations applies to situations like this one, we decide that Defendant's view of the law is correct: "[T]he period of limitation runs from the date of the event when discharge becomes impossible . . . ." Guglielmini, 425 F.2d at 443. In our view,

CAL'S choice to convert from Chapter 11 to Chapter 7 operated like a waiver of discharge, making discharge impossible.

When CAL'S bankruptcy was converted to Chapter 7, on 1 December 1987, discharge was no longer possible, and the statute of limitations began to run. Thus, the government had until December 1992 to file an indictment for the concealment of CAL'S assets. The indictment in this case was not filed until July 1996. Therefore, the

charges against Defendant were brought after the expiration of the period of limitations; and the motion to dismiss the indictment should have been granted.

REVERSED.