UNITED STATES of America,

v.

George ATIYEH, Defendant.

No. CRIM.A. 04–213.

United States District Court, E.D. Pennsylvania.

Aug. 4, 2004.

obliterated serial number.

Ronald G. Cole, United States Attorney's Office, Philadelphia, PA, for Plaintiff.

Thomas A. Bergstrom, Malvern, PA, for Defendant.

## MEMORANDUM

ROBRENO, District Judge.

Presently before the Court is defendant's motion to dismiss counts 1 and 2 the indictment. Essentially, the charges brought against the defendant allege that he, while acting as the president and 50% shareholder of a debtor in possession (DIP) corporation in bankruptcy proceedings, withdrew funds from DIP accounts without prior authorization of the Bankruptcy Court and that in order to conceal these unauthorized withdrawals, he deposited checks to the DIP accounts drawn on accounts having insufficient funds and submitted false monthly operating reports to the Bankruptcy Court. Defendant asserts that counts 1 and 2 of the two count are indictment are duplicitous, that counts 1 and 2 are multiplicitous, and that the statute of limitations bars any conviction based on acts of embezzlement or concealment prior to April 14, 1999. For the reasons that follow, the motion will be denied.

## I. THE INDICTMENT [1]

The indictment was filed on April 14, 2004. Count 1 of the indictment charges that defendant was the controlling owner of Quality Realty Construction, Inc. ("QRCI"). In 1996, QRCI sold a building

1. The following facts are extracted directly from the indictment.

that it owned to Regional Realty Holding, Inc. ("RRHI") for $425,000 subject to a purchase money mortgage in the amount of $375,000 to be paid in 60 monthly payments of $7,967.64 each, beginning in October of 1996 and ending September of 2001. On or about February 7, 1997, QRCI filed a voluntary petition signed by defendant under Chapter 11 of the U.S. Bankruptcy Code, in the U.S. Bankruptcy Court for the E.D. of Pennsylvania.

By order dated February 25, 1997, the Bankruptcy Court required the debtor QRCI to deposit all mortgage payments received from RRHI in a DIP account and prohibited the debtor QRCI from disbursing any of the funds received from RRHI unless authorized by the Bankruptcy Court. Four DIP accounts were established, among others, at the First Union National Bank. The indictment alleges that between "March of 1997 through August of 2000, [defendant] wrote checks, made withdrawals, and made ATM withdrawals from [the four First Union accounts] totaling approximately $280,000 that were not authorized by the Bankruptcy Court," in violation of 18 U.S.C. § 153.

Count 2 of the indictment alleges that defendant submitted false monthly operating reports to the Bankruptcy Court in order to conceal funds that constituted property of the debtor and that defendant deposited checks into the DIP accounts with insufficient funds drawn on checking accounts he controlled, thereby creating falsely inflated apparent DIP account balances. The charge in count 2 is that defendant knowingly and fraudulently con-cealed property belonging to the estate of the debtor, that is funds in the approximate amount of $280,000 in excess of disbursements authorized by the Bankruptcy Court, in violation of 18 U.S.C. § 152(1).

## II. DISCUSSION

### A. *Duplicity.*

An indictment is duplicitous where it combines two or more distinct and separate offenses in a single count in violation of Fed.R.Crim.P. 8(a). *United States v. Haddy,* 134 F.3d 542, 548 (3d Cir.1998). Duplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing. *Id.* Duplicitous counts may also mask whether or not there was unanimity among the jury with respect to each offense. *United States v. Starks,* 515 F.2d 112, 117 (3d Cir.1975).

Defendant appears to argue that count 1 is duplicitous because it includes all the allegedly unauthorized withdrawals from the DIP account in one count and that count 2 is duplicitous because it includes all the allegedly false monthly operating reports filed with the Bankruptcy Court and all the deposits of checks drawn on accounts having insufficient funds in one count.[2] The government has taken the position that neither count is duplicitous as each encompasses a single scheme to either embezzle or to conceal embezzlement.

**2.** Defendant relies on *United States v. Melton,* 763 F.2d 401 (11th Cir.1985); *United States v. Moss,* 562 F.2d 155 (2d Cir.1977); and *United States v. Kaldenberg,* 429 F.2d 161 (9th Cir. 1970) in support of his argument that count 2 is duplicitous. Rather than dealing with duplicity, each of these cases dealt with the question of whether or not multiple acts of could properly be charged in *multiple* counts.

The issue raised by the defendant in the instant case is whether multiple acts may be included within a *single* count, an altogether different question. Although the government may be permitted to charge multiple acts in multiple counts, it does not follow that it cannot charge multiple acts in a single count, if it so chooses.

It is well established that two or more acts, each of which alone could constitute an offense, may be charged in a single count if they could be characterized as part of a single, continuing scheme. *United States v. Shorter,* 809 F.2d 54, 56 (D.C.Cir.1987). For example, in *United States v. Jaynes,* 75 F.3d 1493, 1502 (10th Cir.1996), defendant was charged with receiving monthly annuity checks made out to defendant's grandmother. Defendant signed her grandmother's name and cashed sixty-four of the checks. Although only count one of the indictment charged the defendant with forgery, the court found that "because the alleged forgeries were all part of a single scheme ... [they] were properly charged in a single count." *Id.* at 1502.

In *United States v. Papia,* 910 F.2d 1357, 1364 (7th Cir.1990), the government aggregated 31 illegal payments to a union in violation of the Taft–Harley Act into one count. The court found that "when the defendant formulates a plan or scheme or sets up a mechanism that allows him to take money on a recurring basis" aggregation of separate acts is proper. *Id.*

As for the specific crime of embezzlement, courts have recognized that "[o]rdinarily embezzlement is accomplished by 'several separate transactions (that) may form a single, continuing scheme, and may therefore be charged in a single count.'" *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir.1978)(citing *United States v. Daley,* 454 F.2d 505, 509 (1st Cir.1972)); *see also United States v. Smith,* 373 F.3d 561, 567 (4th Cir.2004)(where defendant "created a recurring, automatic scheme of embezzlement" the offense is more properly characterized as a continuing offense than a series of separate acts).

In *United States v. Grossi,* No. 94–cr– 799, 1995 WL 571417, at *1, 1995 U.S. Dist. LEXIS 13923, at *4 (N.D.Ill. Sept. 25, 1995), a case where arguments parallel to those made here were raised, defendant was charged with a scheme to defraud a township, in violation of 18 U.S.C. § 666, which permits the government to prosecute any government official who "embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property" from a municipal program receiving in excess of $10,000 of federal funds annually. Defendant was charged with, among other things, multiple acts of issuing checks from a general assistance fund to individuals who provided no work or who never applied for, and who were not eligible for assistance from the township. *Id.* at 1995 WL 571417, *1, 1995 U.S. Dist. LEXIS 13923, *2. Count 1 of the indictment alleged seven separate acts of issuing checks or causing payment to various individuals, each act allegedly occurring over a period of time between 3 months to fourteen months and each act involving more than one check or payment. *Id.* at 1995 WL 571417, *3, 1995 U.S. Dist. LEXIS 13923, *9–10. The court found that only "Act 7" was within the five-year statute of limitations. *Id.* at 1995 WL 571417, *3, 1995 U.S. Dist. LEXIS 13923, *10.

Although defendant argued otherwise, the court found that count 1 was not duplicitous because it charged a single scheme, the common thread being the defendant's position within the township and his abuse of that position to steal from general assistance fund. *Id.* at 1995 WL 571417, *3, 1995 U.S. Dist. LEXIS 13923, *11. As for concerns of prejudicial evidentiary rulings and a non-unanimous jury, the court found that these issues could be fully addressed at trial. *Id.* at 1995 WL 571417, *4, 1995 U.S. Dist. LEXIS 13923, *12. Finally, with respect to the issue of the statute of limitations, the court found that "where a defendant is properly charged with multiple acts in furtherance

of a scheme, 'events occurring prior to the limitations period are relevant to establish a scheme to defraud and the defendants' intent.' " *Id.* (quoting *United States v. Wright,* No. 89–cr–1093, 1990 WL 78035, at *1–2, 1990 U.S. Dist. LEXIS 6611, at *3 (N.D.Ill. May 31, 1990)).

■ In view of the forgoing, it is clear that the repeated unauthorized withdrawals allegedly made by the defendant are properly charged in a single count. The acts took advantage of a single "mechanism" or "recurring, automatic scheme," which allowed defendant to embezzle funds from a bankruptcy estate in which defendant, as a DIP, abused his role as a fiduciary by employing the same or similar means of theft. To the extent that any concerns about a unanimous verdict and the statute of limitations are raised, such concerns may be allayed by a jury instruction requiring unanimity as to at least one of the affirmative acts within the permissible time period. *Shorter,* 809 F.2d at 56; *see also United States v. Aracri,* 968 F.2d 1512, 1517–1518 (2d Cir.1992)(conviction upheld on a count containing "several" schemes in furtherance of a conspiracy where arguably one of the schemes was within the statutory period and the judge instructed the jurors to consider only the time period within the statute of limitation). To the extent that fair sentencing may be called into question in view of the Supreme Court's recent opinion in *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court, if called upon and if deemed necessary at that time, will consider the use of special verdict sheets and instruct the jury as necessary to ensure that each potential

sentencing factor (such as the total amount of money embezzled) has been unanimously agreed upon. Any concerns about unfairly prejudicial evidentiary rulings may be addressed at trial.[3] Accordingly, the Court finds that count 1 is not duplicitous.

■ As for count 2, the Court sees no reason why the analysis underscoring its finding as to count 1 would not apply with equal force to count 2, which charges multiple acts to conceal the alleged acts of embezzlement. Indeed, 18 U.S.C. § 3284, which the Court finds applicable to count 2, considers concealment of assets during a Chapter 11 proceeding a "continuing offense."

B. *Multiplicity.*

■ Multiplicity concerns are raised when an indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause. *United States v. Pollen,* 978 F.2d 78, 83 (3d Cir.1992). Count 1 of the indictment is brought under 18 U.S.C. § 153 and count 2 is brought under 18 U.S.C. § 152(1). Section 153 provides as follows:

> A person ... who knowingly and fraudulently appropriates to the person's own use, embezzles, spends... any property, belong to the estate to the debtor....

§ 153(a).

■ Section 152(1) provides that:

> A person who—knowingly and fraudulently conceals ... in connection with a case under title 11, from creditors or the United States Trustee, any property be-

---

**3.** For the present purposes, the Court will only note that in *Becker v. ARCO Chemical Co.,* 207 F.3d 176, 196 (3d Cir.2000), the Third Circuit recognized that, under certain circumstances, prior bad acts may be introduced to show "proof of a working plan, operating towards the future with such force as to render probable both the [subsequent] act and the accompanying state of mind" (citing II Wigmore, *Evidence* § 300, at 238 (Chadbourne rev.1979)).

longing to the estate of the debtor shall be guilty of this offense. § 153(1). Because, § 153 requires proof of embezzlement and § 152 does not, and § 152 requires proof of concealment and § 153 does not, the two counts encompass different offenses under the *Blockburger* test.[4] Therefore, the indictment does not offend the Double Jeopardy Clause.

## C. *Statute of Limitations.*

The parties concede that the general five-year statute of limitations for non-capital offenses found in 18 U.S.C. § 3282(a) applies to count 1. The only issue is its applicability to count 2.

■ Defendant argues that the statute of limitations bars any conviction based on acts of concealment which took place prior to April 14, 1999. In making this assertion, defendant argues that 18 U.S.C. § 3284,[5] which makes the concealment of assets a "continuing offense" until the debtor is finally discharged (or denied discharge) and which tolls the limitation period until final discharge, does *not* apply in this case. In defendant's view, because the "debtor" was a corporation (which according to the Bankruptcy Code if the case is converted to Chapter 7 is never technically discharged from bankruptcy) there was no possibility of final discharge (or denial of discharge), as contemplated by the statute.[6] Accordingly, defendant argues that the general non-capital criminal statute of limitation of five years applies here. *See* 18 U.S.C. § 3282.

■ In support of its argument that § 3284 does apply, the government relies primarily on *United States v. Gilbert*, 136 F.3d 1451, 1454 (11th Cir.1998), an Eleventh Circuit case, where the court found that "where discharge is no longer possible, the date upon which the discharge became impossible is the date upon which the statute of limitations begins to run. In other words, the limitations period should begin when an event occurs that has the same effect as the denial of discharge."[7] The court in *Gilbert* found that voluntary dismissal, waiver of discharge, and the failure to file timely for discharge are events which have the same effect as the denial of discharge. *Id.* at 1455. As applied to the facts before it, the court found that the defendant's choice to convert from Chapter 11, where it would have been eligible for a discharge of its debt to Chapter 7, where it would not, had the effect of making discharge impossible. Thus, the court found that the date on which discharge is no longer possible, i.e., the conversion date, is the date on which the statute of limitations began to run. *Id.*

Defendant argues that the *Gilbert* court disregarded the plain meaning of the statute and impermissibly read into the stat-

**4.** "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**5.** § 3284 provides as follows:

The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense until the debtor shall

have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge.
18 U.S.C. § 3284.

**6.** 11 U.S.C. § 727(a)(1) provides that the "court shall grant the debtor a discharge, unless—(1) the debtor is not an individual." Under § 1141(d)(3)(C), the confirmation of a plan does not discharge a debtor if "the debtor would be denied a discharge under section 727(a)...."

**7.** *Cf.* § 1141(d)(1)(A) *with* § 727(a)(1).

ute the "same effect" language that is not there. The Court disagrees.

 Even under a plain meaning interpretation, the words of a criminal statute "are afforded their natural and plain meaning supplemented by contemporaneous or long-standing interpretations publicly made by the [Congress]." *M. Kraus & Bros., Inc. v. United States,* 327 U.S. 614, 621–22, 66 S.Ct. 705, 90 L.Ed. 894 (1946). The term "debtor," as defined by the Bankruptcy Code means a "person," which in turn is defined to include an "individual, partnership, and *corporation.*" 11 U.S.C. §§ 101(13), 101(41)(emphasis added). Thus, imputing into § 3284 the definition of debtor recognized by Congress in the Bankruptcy Code does not advance defendant's argument that § 3284 draws a line between corporate debtors and individual debtors.

Because the distinction argued by defendant does not accord with the plain and ordinary meaning of "debtor" and because defendant cites no authority to the contrary, the Court shall follow *Gilbert.* Finding § 3284 applicable to count 2, the statute of limitations for count 2 began to run when the Chapter 11 proceeding was converted to a Chapter 7 proceeding.[8]

## III. CONCLUSION

In view of the forgoing, the motion to dismiss the indictment is denied.

### ORDER

**AND NOW,** this **4th day** of **August** 2004, it is hereby **ORDERED** that defendant's motion to dismiss counts 1 and 2 of the indictment (doc. no. 9) is **DENIED** for

---

8. According to the government's papers, the Chapter 11 proceeding appears to have been

the reasons provided in the accompanying memorandum.

**AND IT IS SO ORDERED.**

---

converted to a Chapter 7 proceeding on August 18, 2000.