[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 3, 2007
THOMAS K. KAHN
CLERK

No. 07-10048
Non-Argument Calendar

_____

D. C. Docket No. 06-00170-CR-01-TCB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE WILLIAM AVELAR-AMAYA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 3, 2007)**

Before DUBINA, CARNES and HULL, Circuit Judges.

PER CURIAM:

Jose Avelar-Amaya appeals his conviction for illegal reentry into the United

States, in violation of 8 U.S.C. § 1326(a) and (b)(2).  After review, we affirm.

## I.  BACKGROUND

In 1992, Avelar-Amaya, a citizen of El Salvador, was living illegally in Los Angeles, California.  In October 1992, Avelar-Amaya pled guilty to state charges of selling/transporting narcotics and received a 198-day jail sentence.  In May 1993, after serving his sentence, Avelar-Amaya was deported to El Salvador.

Two weeks after returning to El Salvador, Avelar-Amaya applied for an immigrant visa at the United States Embassy in El Salvador.  On his visa application, Avelar-Amaya falsely denied that he had ever been convicted of a controlled substance offense or had ever been deported.  Avelar-Amaya also failed to state that he had an alien number and a social security number.

On June 1, 1993, Avelar-Amaya received a visa.  On June 19, 1993, Avelar-Amaya traveled to Los Angeles and presented his visa to United States customs agents.  The customs agents permitted Avelar-Amaya to enter the United States.

On February 1, 2006, Avelar-Amaya was arrested in Georgia on a state charge of interference with custody.  While being housed at the Clayton County Jail, agents from the Department of Homeland Security ("DHS") took Avelar-Amaya's fingerprints and matched them with his 1993 deportation warrant.

On April 11, 2006, Avelar-Amaya was indicted on one count of being found

in the United States after having been previously deported and without having obtained the consent of either the Attorney General or the Secretary of Homeland Security to reapply for admission, in violation of 8 U.S.C. § 1326(a) and (b)(2). Specifically, the indictment charged Avelar-Amaya with having been "found in" the United States on February 16, 2006, which was the date DHS officials matched Avelar-Amaya's fingerprints and determined his status as a previously deported alien.

Prior to trial, Avelar-Amaya moved to dismiss the indictment, arguing that the indictment was barred by the five-year statute of limitations. Avelar-Amaya claimed that he was "found in" the United States when customs agents permitted him to enter the United States in June 1993 and that, therefore, the five-year statute of limitations had expired in June 1998.

The district court denied Avelar-Amaya's motion to dismiss the indictment. The district court declined to find that Avelar-Amaya was "found in" the United States in 1993 because Avelar-Amaya had knowingly provided false information to the United States Embassy in El Salvador and withheld material information in order to obtain his visa.

Pursuant to a written plea agreement, Avelar-Amaya entered a conditional plea of guilty. In the plea agreement, the parties stipulated to the facts recited

3

above. In addition, Avelar-Amaya stipulated that he had never obtained permission to reapply for entry into the United States after having been deported and that there were no available records to indicate whether officials conducted a background check at the United States Embassy in El Salvador in 1993. Avelar-Amaya also waived his right to appeal his conviction and sentence on any ground except a sentence higher than the applicable guideline range or the denial of his motion to dismiss the indictment.

The district court accepted Avelar-Amaya's plea. Avelar-Amaya was sentenced to 51 months' imprisonment. Avelar-Amaya filed this appeal.

## II. DISCUSSION

On appeal, Avelar-Amaya contends that the district court abused its discretion when it denied his motion to dismiss the indictment as time-barred.[1]

Under 8 U.S.C. § 1326(a), an alien is subject to imprisonment if he has been previously deported, and then "enters, attempts to enter, or is at any time found in, the United States" without having obtained the express consent of the Attorney General to reapply for admission. 8 U.S.C. § 1326(a). The applicable statute of limitations provides, "Except as otherwise expressly provided by law, no person

_____

[1]We review a district court's denial of a motion to dismiss an indictment for an abuse of discretion, and review the district court's interpretation and application of the statute of limitations de novo. United States v. Torres, 318 F.3d 1058, 1061 n.6 (11th Cir. 2003).

shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a); see United States v. Clarke, 312 F.3d 1343, 1346 (11th Cir. 2002) (providing that the statute of limitations for 8 U.S.C. § 1326 is found in 18 U.S.C. § 3282).

A statute of limitations in criminal cases ordinarily begins to run when the crime is complete. Toussie v. United States, 397 U.S. 112, 115, 90 S. Ct. 858, 860 (1970); United States v. Gilbert, 136 F.3d 1451, 1453 (11th Cir. 1998). "[A] violation of § 1326 is a continuing offense that can run over a long period of time, as the offense conduct begins when the alien illegally enters the United States and continues until the alien is actually 'found' by immigration authorities." United States v. Scott, 447 F.3d 1365, 1369 (11th Cir. 2006). Thus, the applicable five-year statue of limitations for a § 1326 offense begins to run when the alien is "found in" the United States by immigration authorities.

"[A]n alien is constructively 'found in' the United States when the government either knows of or, with the exercise of diligence typical of law enforcement authorities, could have discovered the illegality of the defendant's presence." Id. (quotation marks omitted). Avelar-Amaya argues that immigration officials could have discovered his illegal reentry into the United States in June

5

1993 if they had acted diligently because his visa contained true identifying information and he entered at a United States port of entry.

The problem for Avelar-Amaya is that, although Avelar-Amaya used his real name and date of birth to obtain a visa and enter the United States, he lied about his prior felony drug conviction in the United States and his resulting deportation. Thus, when Avelar-Amaya reentered the United States in June 1993, immigration officials were aware of Avelar-Amaya's presence in the United States, but were not aware of the <u>illegality</u> of his presence.

Avelar-Amaya contends that it was unreasonable for customs agents not to further investigate his immigration status. We disagree. Avelar-Amaya presented customs agents with a facially valid visa issued by the United States Embassy in El Salvador. Avelar-Amaya does not contend that the visa (or any other information he presented) should have put the customs agents on notice that he could not legally enter the United States or that he had previously been deported. Under the circumstances of this case, it was not unreasonable for customs agents to admit Avelar-Amaya without further investigation into whether his presence might be illegal.[2] Indeed, the failure of customs agents to discover the illegality of Avelar-

---

[2]For this reason, <u>United States v. Scott</u>, 447 F.3d 1365 (11th Cir. 2006), is distinguishable. In Scott, the government was deemed to have constructively "found" the alien when the alien, who had been arrested and jailed under an alias, confessed to a DHS agent during an interview not only his true name but also the fact of his prior deportation and illegal

6

Amaya's presence was attributable to not to any lack of diligence on their part, but to Avelar-Amaya's successful efforts to conceal his illegal status through the use of a fraudulently obtained visa.

Thus, Avelar-Amaya was not constructively found in the United States in June 1993. Rather, Avelar-Amaya was "found in" the United States, and his offense was complete, in February 2006, when DHS agents discovered the illegality of Avelar-Amaya's presence in the United States. See, e.g., United States v. DeLeon, 444 F.3d 41, 52-53 (1st Cir. 2006) (concluding that, where an alien used deception to avoid detection by immigration officials at a port of entry, the alien was not "found in" the United States for statute of limitations purposes when he entered the United States, but when his status as a deported alien was discovered through a fingerprint match after he was arrested); United States v. Acevedo, 229 F.3d 350, 355-56 (2d Cir. 2000) (finding that, a deportee who gained readmission to the United States by presenting an invalid green card at a port of entry did not place immigration officials on notice that his presence in the United States was illegal even though the alien used his real name).

reentry. In other words, the alien in Scott alerted immigration officials to the illegality of his presence in the United States, making the § 1326 offense complete. Here, Avelar-Amaya concealed his prior deportation and illegal reentry (i.e., the illegality of his presence in the United States) from customs agents at the port of entry by using his fraudulently obtained visa. Thus, immigration officials had to uncover his illegal status through reasonable investigation after Avelar-Amaya was arrested on state charges and brought to their attention.

7

Because the five-year statute of limitations did not begin to run until February 2006, Avelar-Amaya's April 2006 indictment was timely. Accordingly, the district court did not abuse its discretion in denying Avelar-Amaya's pretrial motion to dismiss the indictment.

**AFFIRMED.**