[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 13-14870; 15-10331
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cr-00240-JA-TBS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN K. FREEMAN,

Defendant-Appellant.


_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(November 16, 2015)


Before MARTIN, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, John Freeman appeals his conviction for concealment of assets in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(a).  Freeman's conviction was based on Freeman's failure to disclose a bank account that he held jointly with his mother ("joint account").  Freeman also appeals the district court's dismissal of Freeman's motion for a new trial based on newly discovered evidence.  No reversible error has been shown; we affirm.

I.

Freeman first challenges the district court's denial of his motion to dismiss his indictment (returned on 3 August 2011) as barred by the five-year statute of limitations.[1]  The district court determined that the limitations period began running on 7 August 2006, when the bankruptcy court entered a written order dismissing Freeman's bankruptcy proceeding.  Freeman asserts, instead, that the limitations period began running on 14 July 2006, when Freeman filed his "notice of voluntary dismissal."

---

[1] The parties agree that Freeman's offense is subject to a five-year statute of limitations.  See 18 U.S.C. § 3282(a).

We review for abuse of discretion the district court's denial of a motion to dismiss an indictment, but "review de novo the district court's interpretation and application of the statute of limitations." United States v. Palomino Garcia, 606 F.3d 1317, 1322 (11th Cir. 2010) (quotations omitted).

Because Freeman's offense is a "continuing offense," the limitations period begins to run only when the debtor is finally discharged or when a discharge is denied. See 18 U.S.C. § 3284. In cases where a discharge is no longer possible, however, the limitations period begins to run on the date on which the discharge became impossible. United States v. Gilbert, 136 F.3d 1451, 1454-55 (11th Cir. 1998). The limitations period may begin running, for instance, upon voluntary dismissal of the bankruptcy proceedings. Id. at 1455.

The issue in this case is determining the effective date of Freeman's voluntary dismissal and, thus, the date the limitations period began running. The pertinent bankruptcy statutes and rules contemplate a two-step process for voluntary dismissals: the debtor's request for dismissal followed by the court's actual dismissal of the bankruptcy proceedings. See 11 U.S.C. § 1307(b) (emphasis added) ("[o]n request of the debtor at any time . . . the court shall dismiss a case under this chapter."); Fed. R. of Bankr. Proc. 1017(f)(2) (emphasis added) (providing that voluntary dismissals under section 1307(b) "shall be on

3

motion filed and served" in accordance with Rule 9013, governing the filing of motions or "request[s] for an order.").

In the light of this statutory language, Freeman's notice of voluntary dismissal constituted only a request for dismissal, not a self-executing dismissal itself.[2] The effective date of Freeman's voluntary dismissal -- and thus, the date the limitations period began running -- was the date on which the bankruptcy court entered its written order of dismissal on the docket.[3] Because Freeman's indictment was filed within five years of that date, the district court denied properly Freeman's motion to dismiss.

## II.

Freeman next challenges the district court's denial of his motion for judgment of acquittal. Freeman contends that the evidence presented at trial was

---

[2] Freeman's reliance on United States v. Gilbert, 136 F.3d 1451 (11th Cir. 1998), is misplaced. In Gilbert, this Court said only that the statute of limitations may begin running upon voluntary dismissal of bankruptcy proceedings, but said nothing about whether a debtor's notice of voluntary dismissal itself triggers the running of the limitations period. See Gilbert, 136 F.3d at 1454-55.

[3] In his reply brief, Freeman argues for the first time that the limitations period began running when the bankruptcy court dismissed orally his case at a hearing on Freeman's motion to dismiss. Arguments raised for the first time in a reply brief are deemed abandoned. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Moreover, the bankruptcy court's order of dismissal became effective only when judgment was entered on the docket on 7 August 2006. See Fed. R. Bankr. P. 7058 (applying Fed. R. Civ. P. 58 to adversary proceedings); Fed. R. Civ. P. 58(c)(1) (judgment is entered "when the judgment is entered in the civil docket.").

insufficient to establish either that the joint account constituted property of Freeman's estate or that Freeman had the requisite fraudulent intent.

We review de novo the denial of a motion for judgment of acquittal based on sufficiency of the evidence, "considering the evidence in the light most favorable to the government, and drawing all reasonable inferences and credibility choices in the government's favor." United States v. Capers, 708 F.3d 1286, 1296 (11th Cir. 2013). "We will not reverse unless no reasonable trier of fact could find guilt beyond a reasonable doubt." United States v. Farley, 607 F.3d 1294, 1333 (11th Cir. 2010).

To prove concealment of assets in a bankruptcy proceeding, the government must establish that defendant "knowingly and fraudulently conceal[ed] from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property . . . any property belonging to the estate of a debtor." 18 U.S.C. § 152(1). A bankruptcy debtor's estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C §§ 541(a)(1), (a)(7). Whether property constitutes property of the debtor's estate is a question of fact for the jury. United States v. Dennis, 237 F.3d 1295, 1300 (11th Cir. 2001).

5

Viewing the evidence in the light most favorable to the government, sufficient evidence exists from which a reasonable juror could conclude that Freeman was guilty beyond a reasonable doubt.  At trial, the government presented evidence that, the day before filing for bankruptcy, Freeman -- who was a forensic certified public accountant -- sold a tract of land that he and his mother owned.  The proceeds of the sale were deposited into the joint account; and Freeman reported to the IRS that he received personally gross proceeds of $275,000 as a result of the sale.  The government also presented evidence that, while Freeman's bankruptcy proceeding was pending, Freeman wrote several large checks from and withdrew money out of the joint account to pay for his own personal and business expenses.  At no point did Freeman disclose the existence of the joint account to his bankruptcy trustee or to his creditors.

Freeman testified in his own defense at trial.  In pertinent part, Freeman testified that the joint account belonged to his mother, that his name was on the account only because of his mother's poor health, and that he withdrew funds from the account only with his mother's express consent.  Freeman also testified that he had no intent to conceal assets.  On cross-examination, the government presented deposition testimony from Freeman's mother indicating that she had no memory of the joint account and no knowledge about whether the money in the account belonged to her.

6

The jury was entitled to disbelieve Freeman's testimony and to use his testimony as substantive evidence of guilt.  See United States v. Williamson, 339 F.3d 1295, 1301 n.14 (11th Cir. 2003).  "[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant."  United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005).

In the light of the evidence presented at trial, a juror could conclude reasonably that the joint account was part of Freeman's bankruptcy estate and that Freeman concealed knowingly the account's existence from the bankruptcy trustee and from his creditors.  We will not reverse the jury's verdict; we affirm the denial of Freeman's motion for judgment of acquittal.  See Farley, 607 F.3d at 1333.

III.

Freeman also contends that the district court erred in denying his motion for a new trial based on newly discovered evidence of a brain tumor.  Freeman was first diagnosed with a brain tumor in 2014, and the tumor was removed successfully a few days later.  In support of his motion, Freeman produced a report from a psychologist -- prepared after removal of Freeman's tumor in 2014 -- which Freeman contends demonstrates that his tumor affected his judgment and behavior at the time of his offense in 2005.

We review the denial of a motion for new trial for abuse of discretion. United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (en banc). "Motions for new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution." Id. To succeed on his motion for new trial, Freeman must show, among other things, that (1) "the evidence is material to issues before the court," and (2) "the evidence is such that a new trial would probably produce a different result." See United States v. Jernigan, 341 F.3d 1273, 1287 (11th Cir. 2003).

The district court abused no discretion in denying Freeman a new trial. Freeman failed to produce evidence demonstrating either that his tumor existed in 2005, when he committed his offense, or that the tumor affected his ability, in 2005, to form intent to commit bankruptcy fraud. Cf. United States v. Cameron, 907 F.2d 1051, 1067 (11th Cir. 1990) (psychiatric evidence offered to negate specific intent is admissible only "when such evidence focuses on the defendant's specific state of mind at the time of the charged offense."). The psychologist's report opined only that Freeman's "tumor likely impacted his judgment, behavior and memory and other forms of functional cognition over the course of the past several years," and contained no express or implied opinion about Freeman's condition in 2005. As a result, Freeman has failed to show that the newly discovered evidence is either material to the issues before the court or likely to

8

produce a different result at trial.  The district court denied properly Freeman's motion for a new trial.

We also agree with the district court's alternative ruling that the psychologist's report would be inadmissible as expert opinion testimony.  The doctor's conclusions about Freeman's condition before removal of the tumor are based entirely on Freeman's subjective self-reports and on reports from Freeman's friends and family.  Because the doctor's opinions lack a scientific basis, they are insufficiently reliable to be admissible at trial.  For background, see Fed.R.Evid. 702; Daubert v. Merrell Dow Pharms., 113 S.Ct. 2786 (1993).

AFFIRMED.