**UNITED STATES of America, Plaintiff,**

v.

**Jerome R. SULLIVAN, Defendant.**

**No. 97–CR–490.**

United States District Court,
S.D. Florida.

Nov. 23, 1998.

AUSA Andrew Oosterbaan, Miami, FL, for Plaintiff.

Mark Schnapp, Jane Moskowitz, Miami, FL, for Defendant.

## SENTENCING ORDER

GOLD, District Judge.

On January 27, 1998, the Defendant, Jerome Sullivan, pled guilty to a Ten Count Superseding Information which charged him with Embezzlement of Government Funds (Counts One, Four, Five Six, Seven, and Eight), in violation of 18 U.S.C. Section 641; Making False Statements (Counts Two, Nine, and Ten), in violation of 18 U.S.C. Section 1001, and Obstruction of Justice (Count Three), in violation of 18 U.S.C. Section 1512(b)(3). The relevant criminal activity occurred over approximately five years. The time frame for Counts One and Two is between June 10, 1992 and May 10, 1993; for Count Three, between February 14, 1994 and September 14, 1994; for Count Four, between February 1, 1994 and June 7, 1994; for Count Five, between August 16, 1995 and October 31, 1996; for Count Six, between August 14, 1996 and May 31, 1997; for Count Seven, between August 29, 1996 and May 31, 1997; for Count Eight, between February 13, 1997 and May 31, 1997; for Count Nine, on May 15, 1997; and for Count Ten, on May 19, 1997 [hereinafter the "Relevant Dates"]. Following the plea, the Probation Officer prepared a Pre–Sentence Investigation Report ["PSR"] determining a total offense level of 24 and a criminal history category of I, resulting in a recommended guideline sentence OF between 51 to 63 months.

Defendant has filed objections to the PSR. He objects (1) to the statement of Special Agent Paul E. Mallet, Jr.; (2) to various groupings of crimes for sentencing purposes; (3) to his base offense level being increased by two levels pursuant to U.S.S.G. § 3C1.1; and (4) to the amount of restitution. Defendant requests that his adjusted offense level be decreased by three levels for having accepted responsibility pursuant to U.S.S.G. § 3E1.1. He further requests a downward departure, because either alone or in combination: (a) Defendant suffered from a significantly reduced mental capacity which contributed to the commission of the offense; (b) Defendant is a likely target of abuse in the prison system; and (c) Defendant has sought to rehabilitate himself since his arrest. Essentially, Defendant requests the Court to reduce his offense level category from 24 to 9, and to impose home detention instead of incarceration.

In response, the Government opposes each objection and all requests for downward departure. After holding extensive evidentiary hearings, and upon fully considering the arguments of counsel, for the reasons set forth below, the Court concludes that Defendant's objections his and requests for downward departure should be denied, except as to restitution.

## I. OBJECTION TO STATEMENT OF SPECIAL AGENT PAUL E. MALLET IN THE PSR

Defendant contends that because the PSR will accompany him to the facility where he will serve his sentence, the inclusion of the statement in the PSR may cause him to suffer unfair prejudice while at the facility. The Court summarily rejects this objection. Pursuant to Fed.R.Crim.P. 32(b)(4)(D), the

United States Probation Office is statutorily mandated to investigate a victim's impact resulting from Defendant's crimes and to include that information in the PSR. In his response to this objection, the Probation Officer notes that inclusion of such a Victim Impact Statement complies with Publication 107 of the Administrative Office of the United States Courts. Pursuant to this publication and the Victim and Witness Protection Act of 1982, as amended, the victim's statement is properly presented in the PSR. Nothing contained in the victim's statement is so prejudicial as to compel the Court to ignore the statutory obligations.

## II. OBJECTIONS TO PLACEMENT OF OFFENSE LEVEL CONDUCT INTO THREE SEPARATE GROUPINGS

Defendant argues that, pursuant to U.S.S.G. § 3D1.2, there is no basis to include the conduct charged in the Information and the relevant conduct [as stipulated to the Plea Agreement] into three separate groups pursuant to U.S.S.G. § 3D1.2. According to Defendant, all of his relevant offense conduct should be grouped together pursuant to U.S.S.G. § 3D1.2(b), because all counts of conviction and other relevant conduct involve "the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." As a result, Defendant contends that the proper total offense level should be 16 instead of 24.[1]

### A. OBJECTIONS TO GROUP ONE

In the PSR, Counts Two, Nine, and Ten have been grouped together pursuant to § 3D1.2(b),[2] and then additionally grouped with Counts One, Four, Five, Six, Seven, and Eight pursuant to § 3D1.2(c).[3] Defendant argues that these groupings constitute error. He contends that, pursuant to § 3D1.2(b),

the counts involving false statement (Counts Two, Nine, and Ten) should be grouped with the counts involving embezzlement (Counts Four, Five, Six, Seven, and Eight), since they are part of the same common scheme. Defendant also objects to Paragraph 49, which provides a two level increase pursuant to § 3C1.1 based on the conduct charged in Counts Two, Nine, and Ten (False Statements) of the Information.

In his Addendum to the PSR, the Probation Officer acknowledges that the counts charging False Statements can be grouped pursuant to U.S.S.G. § 3D1.2(b), and that all counts assigned to Group One are part of the same scheme, i.e., the Defendant embezzled the money and then lied about it. However, because one or more of the counts charging False Statements rise to the level of obstruction of justice as defined in § 3C1.1, the counts are properly grouped pursuant to U.S.S.G. § 3D1.2(c), resulting in a two level increase. The Court rejects Defendant's arguments to the contrary.

First, the Probation Officer's grouping is not "double counting." According to Defendant, the Probation Officer "double counted" because he applied a Section 3C1.1 obstruction of justice enhancement to the false statements and representations relating to the Group One embezzlement conduct, and then separately grouped the obstruction of justice in Count Three and the stipulated sentence reduction fraud. The Defendant further asserts that, pursuant to Section 3D1.2(c), the conduct giving rise to the obstruction of justice enhancement in Group One should be considered a "specific offense characteristic" of the other obstruction of justice charge in Count Three and the stipulated sentence reduction fraud. Then, Defendant contends, to prevent "double counting," all conduct must be treated as a separate group.

---

1. Defendant objects to: ¶ 40 on page 18 of the PSR; ¶¶ 41–43 on pages 18–19 of the PSR; ¶ 49 on page 19 of the PSR; ¶ 50 on page 19 of the PSR; ¶ 51–62 on pages 20–21 of the PSR; ¶¶ 63–70 on page 21 of the PSR; ¶ 72 on page 21 of the PSR; and ¶ 73 on page 21 of the PSR.

2. The Guidelines require that all counts involving substantially the same harm shall be grouped together into a single Group. Counts involve

substantially the same harm within the meaning of § 3D1.2(b) when they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

3. Section 3D1.2(c) applies when one of the counts embodies conduct that is treated as a specific offense characteristic of, or other adjustment to, the another of the applicable counts.

■ Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the guidelines. *United States v. Dudley,* 102 F.3d 1184 1186 (11th Cir.1997). Double counting under separate guidelines is permitted if the Sentencing Commission intended that result, and if each section concerns conceptually separate notions relating to sentencing. *United States v. Aimufua,* 935 F.2d 1199, 1200–01 (11th Cir.1991).

■ Here, the Defendant received the two-level enhancement pursuant to § 3C1.1 in the Group One embezzlement conduct, because the natural effect of his false statements and representations [as charged in Counts Two, Nine, and Ten] was the thwarting of the ongoing official investigation into missing FBI funds embezzled by Defendant. This conduct is not part of the same scheme. It represents a separate harm from both the obstructive conduct assigned to Groups Two and Three, and the obstruction of justice resulting from the sentence reduction fraud in a completely separate case.

Second, Defendant objects to the two-level enhancement pursuant to § 3C1.1.[4] He claims the false statements charged in Counts Two, Nine, and Ten do not rise to the level of obstruction of justice, since the statements were not made during an "official investigation" and were not "a willful attempt to obstruct or impede the administration of justice in relation to the instant offense." In support, Defendant cites *United States v. Kirkland,* 985 F.2d 535 (11th Cir.1993). Defendant's reliance on *Kirkland* is misplaced.

The court in *Kirkland* held that a bank examiner's investigation into an employee's embezzlement was not an "official investigation," and consequently, false statements that the employee induced a third party to make to the examiner in the course of his investigation could not serve as the basis for an enhancement under U.S.S.G. § 3C1.1, because "[n]o official investigation connected to law enforcement or any other government entity had been initiated." *Id.* at 537. However, the *Kirkland* court noted that cases which have extended the application of this guideline beyond conduct occurring during the pendency of some judicial proceedings have one common factor: they all involve some type of law enforcement or other action by government employees acting within the course and in furtherance of their official duties. *See id.* (citations omitted).

This is precisely the point in the instant case. As proffered at the plea proceedings, Defendant acknowledged making material false statements and representations to FBI personnel in an attempt to conceal his embezzlements and to steer investigators away from the truth.

Like false testimony before a grand jury, the false statements made to government agents or agencies, whether or not under oath, are not excluded from criminal liability. *United States v. Veal,* 153 F.3d 1233, 1241 (11th Cir.1998). Investigation of wrongdoing is a proper governmental function; and since it is the very purpose of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function. *See Veal,* 153 F.3d at 1241 (quoting *Brogan v. United States,* 522 U.S. 398, 118 S.Ct. 805, 809, 139 L.Ed.2d 830 (1998)). In *Veal,* without citing *Kirkland,* the Eleventh Circuit interpreted the meaning of "official proceedings" under numerous obstruction of justice statutes, and recognized legislative history that evidenced congressional intent to broaden the scope of the obstruction of justice scheme. The court's analysis was based on the federal interest of protecting the integrity of potential federal investigations by ensuring that transfers of information to federal law enforcement officers and judges [relating to the possible commission of federal offenses] be truthful and unimpeded. *See id.* at 1250. The same reasoning equally applies

---

4. An example of the type of conduct to which this enhancement applies can be found in U.S.S.G. § 3C1.1, Commentary (n. 3(g)). Enhancement is applicable where a defendant provides a materially false statement to a law enforcement official that significantly obstructed or impeded the official investigation of the instant offense. In this context, "material" means a statement or information that, if believed, would tend to influence or affect the issue under determination. U.S.S.G. § 3C.1.1, Commentary (n. 5).

to the interpretation of U.S.S.G. § 3C1.1 [Obstructing or Impeding the Administration of Justice].

■ The facts underlying Counts Nine and Ten establish, by their preponderance, that an "official investigation" had commenced. This factor further distinguishes this case from *Kirkland.* Defendant was aware that FBI agents were investigating the status of money which they suspected had been taken from evidence seized at the execution of a search warrant. As admitted by his guilty plea to Count Nine, Defendant embezzled the seized money and then, when questioned about it, Defendant lied to his supervisors about its status. Additionally, by pleading guilty to Count Ten, Defendant admitted that he engaged in a course of conduct to mislead the agents and create a false paper trail. Given the Defendant's trusted status as an FBI Supervisory Special Agent, his words and representations were not initially questioned. Indeed, Defendant was the supervisor of the seizing agents. The seized money was known to have been contained, for a time, in his office safe. Defendant's false statements and representations began before his arrest and distracted investigators for a substantial time period. Upon finally discovering that the money was not in the evidence room as claimed by Defendant, he was arrested by FBI agents and prosecuted for the embezzlement and false statements. Under such circumstances, there is sufficient indicia that the investigation conducted into the status of the embezzled money was "official," and that Defendant's false statements did "significantly" and "willfully" obstruct and impede it. On these facts, Defendant's objection is denied.

## B. OBJECTIONS TO THREE SEPARATE GROUPINGS

Defendant next argues that all ten counts of conviction should be assigned to a single group since they "involve substantially the same harm," "the same victim," and are "connected by a common criminal objective or constitute part of a common scheme or plan" (citing § 3D1.2(b)). Under § 3D1.2(b), counts involve substantially the same harm "[w]hen counts involve the same victim and

two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). "[C]ounts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times." U.S.S.G. § 3D1.2, Commentary (n. 4). The provision, however, does not authorize the grouping of an offense that cannot be considered to represent essentially one composite harm. *Id.*

Here, the purpose which Defendant identifies as "common" to all of his offenses, embezzlement, applies only to Group One in the PSR. In Group One, the Probation Officer grouped all of the counts of embezzlement pursuant to § 3D1.2(d), since Group One is driven by the total amount of loss. The false statement counts likewise are grouped, pursuant to § 3D1.2(b), since they are a series of false statements regarding the embezzlement of funds. Finally, the embezzlement counts and false statement counts are grouped together, since Defendant embezzled the funds and lied about it, and one or more of the false statements rise to the level of obstruction of justice. As correctly noted by the Probation Officer in his Addendum to the PSR, the counts in Group One are connected by a common criminal objective and represent the same harm, i.e., the loss of funds entrusted to the FBI. The grouping is driven by the amount of the funds embezzled, the fact that Defendant continued to lie about it, and that all the charged conduct was committed in Defendant's capacity as a supervisory special agent of the FBI. The Court finds no error requiring a change to the guideline applications presented in Group One.

As to Groups Two and Three, neither the obstruction of justice conduct placed in Group Two, nor the Rule 35 fraud (Laratro conduct) placed in Group Three, is sufficiently part of a common scheme or plan, or the same course of conduct [as explained in U.S.S.G. ¶ 1B1.3] as to warrant a single grouping with Group One. To the contrary, the three groups are not the same type of offense and are not closely related under the

facts. *See, e.g., United States v. Jenkins*, 58 F.3d 611, 612 (11th Cir.1995) (transporting stolen securities counts and money laundering counts were appropriately grouped separately because they are not the same type of offense or closely related under the facts).

Defendant's embezzlement of funds from the FBI and lying about it does not represent the "same harm" as misleading the FBI and causing the premature termination of a multi-defendant RICO investigation. Likewise, the false statements made as part of the Laratro matter represents a separate and distinct harm from the embezzlement of funds from the FBI and the false statements which resulted in the premature termination of the multi-defendant RICO investigation by the FBI. The victims of each Group are different. The FBI is the victim of the embezzlements and false statements in Group One; society in general is the victim of the sabotaged investigation; and the victim of the fraudulently obtained sentence reduction is the United States District Court and the United States Attorney's Office for the Southern District of Florida. Where different victims and harms are involved, separate groupings are permissible. *See, e.g., United States v. Johnson*, 87 F.3d 1257, 1259 (11th Cir.1996); *Jenkins*, 58 F.3d at 612; *United States v. Beard*, 960 F.2d 965, 967 (11th Cir.1992).

Under these circumstances, it would be improper to group all Ten Counts of conviction as part of a single group and assign an adjusted offense level of 19, as Defendant urges. To do so would ignore Defendant's conduct as charged in Counts Two, Three, Nine, and Ten, as well as what has been accepted as relevant conduct in Paragraph 6 of the Plea Agreement. For these reasons, the Defendant's objection is denied.

### III. OBJECTION TO DENIAL OF ACCEPTANCE OF RESPONSIBILITY

Defendant asserts that the PSR incorrectly denies him a three level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility. Applying U.S.S.G. § 3E1.1, Commentary (n. 4), the Probation Officer declined to recommend the reduction, because Defendant's offense conduct in Group One resulted in an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Pursuant to § 3E1 .1, Commentary (n. 4), conduct resulting in an enhancement under § 3C1.1 (Obstruction of Justice) ordinarily indicates that a defendant has not accepted responsibility for his criminal conduct. There may be, however, **extraordinary cases** in which adjustments under §§ 3C1.1 and 3E1.1 may apply. *Id.* (emphasis added).

Defendant argues that his situation is "extraordinary" and that he is entitled to receive a reduction for acceptance of responsibility. Although the question of what constitutes an "extraordinary case" has not been determined by the Eleventh Circuit,[5] the Ninth Circuit has addressed the issue in *United States v. Hopper*, 27 F.3d 378 (9th Cir.1994). There, the court reasoned that a case is extraordinary when the "defendant's obstructive conduct is not inconsistent with the defendant's acceptance of responsibility. Cases in which obstruction is not inconsistent with an acceptance of responsibility arise when a defendant, although initially attempting to conceal the crime, eventually accepts responsibility for the crime and abandons all attempts to obstruct justice." *Id.* at 383. In other words, "as long as the defendant's acceptance of responsibility is not contradicted by an ongoing attempt to obstruct justice, the case is an extraordinary case within the meaning of Application Note 4 and simultaneous adjustments under §§ 3C1.1 and 3E1.1 are permissible." *Id.* (citations omitted). This formulation has been adopted and applied in both the Sixth and Tenth Circuits. *See also United States v. Ramirez–Morales*, 125 F.3d 860 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 2308, 141 L.Ed.2d 166 (1998); *United States v. Mizell*, 97 F.3d 1453 (6th

---

**5.** The Eleventh Circuit has held that, although a guilty plea will constitute significant evidence of acceptance of responsibility, this evidence may be outweighed by conduct that is inconsistent with such acceptance. *See United States v. Lew-* *is*, 115 F.3d 1531, 1537 (11th Cir.1997). Thus, an adjustment may not be warranted if a defendant falsely denies relevant conduct for which he is accountable. *See id.*

Cir.1996); *United States v. Wilson*, 1998 WL 717289 (10th Cir.1998).

■ In arguing that this is an extraordinary case, Defendant asserts that he rendered a post-arrest "multi-page statement admitting his culpability" and submitted to a "debriefing" by the FBI without "falsely denying any relevant conduct for which he is accountable." On the other hand, the Government responds that the statement to which Defendant refers contains only part of the truth. After examining the Government's exhibits, the Court concludes that Defendant did not provide complete, truthful, and reliable information at the debriefing conducted by the FBI after his guilty plea in this case, including information relating to the Correo Investigation (Government's Exhibits 10, 28, and 36); the Raffa Investigation (Government's Exhibits 10 and 33), and the loan requests. (Government's Exhibits 10, 11, 30, and 32).[6]

■ In addition, in his post-arrest statement and in his debriefing, Defendant denied or failed to admit that he disclosed confidential information to an unauthorized person. Moreover, he had given several statements which were inconsistent with those attributed to him by his psychologist, and inconsistent with those statements made in his workers' compensation claim submissions. Considering the totality of the circumstances, this is not an "extraordinary" case justifying the disallowance of a reduction under § 3C1.1 when an enhancement under § 3C1.1 is applied. Consequently, the Court denies De-

fendant's objection relating to acceptance of responsibility.

## IV. DEFENDANT'S REQUEST FOR DOWNWARD DEPARTURE[7]

Defendant requests a downward departure pursuant to U.S.S.G. § 5K2.13. A sentence below the applicable guideline range may be warranted under this Guideline if the defendant committed the offense while suffering from a significantly reduced mental capacity.[8] However, the Court may not depart below the applicable guideline range if (1) Defendant's significantly reduced mental capacity was caused by the use of drugs or other intoxicants; (2) the facts and circumstances of Defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) Defendant's criminal history indicates a need to incarcerate Defendant to protect the public. None of these exceptions apply under the circumstance of the case. Accordingly, the issue is whether Defendant committed the offense while suffering from a "significantly reduced mental capacity," which has been defined in the Commentary to mean that Defendant "... has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." § 5K2.15, Commentary (n. 1) (amended November 1, 1998). If a departure is warranted, "the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense." § 5K2.15.[9]

---

6. Due to the sensitive nature of the Government's exhibits, the Court declines to address these matters in detail in this Order. By separate order, all Government Exhibits are sealed.

7. Defendant also seeks downward departure because he is a likely target of abuse in the prison system and he has sought to rehabilitate himself since his arrest. He argues that these factors, when considered cumulatively with his reduced mental capacity, warrant a downward departure. The Court denies downward departure either individually, or cumulatively, on these additional grounds. Defendant's vulnerability is not so extreme as to substantially affect the severity of confinement, nor is his post-arrest rehabilitation so unusual or exceptional as to be atypical. The facts of this case do not take it out of the heart-

land of the guidelines under a *Koon* analysis. *See Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

8. Both Defendant and the Government agree that the November 1, 1998 formulation of the Guideline applies to this case.

9. The amendments to § 5K2.15 codify opinions from both the Third and Seventh Circuits, which have held that the term "mental capacity" in § 5k2.13 retains both a cognitive prong and a volitional prong. *United States v. McBroom*, 124 F.3d 533, 546 (3d Cir.1997); *United States v. Pullen*, 89 F.3d 368, 370–71 (7th Cir.1996), —— U.S. ——, 117 S.Ct. 706, 136 L.Ed.2d 627 (1997). For example, in *McBroom*, it was recognized that

Applying the above criteria, the greater weight of the more credible and convincing evidence fails to establish that Defendant had, or has, a significantly reduced mental capacity, or that any such impairment contributed to the commission of any relevant criminal activity occurring over the five year period between June 1992 and May 1997. Not all emotional problems warrant a downward departure.[10] The Eleventh Circuit recently noted that "[m]any offenders commit crimes because they have poor impulse control." *United States v. Miller,* 146 F.3d 1281, 1286 (11th Cir.1998). Indeed, the U.S. Supreme Court has recognized that:

> Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. **Inmates have necessarily shown a lapse in ability to control and conform their behavior to the legitimate standards of society by the normal impulses of self-restraint; they have shown an inability to regulate their conduct in a way that reflects either a respect for law or an appreciation of the rights of others.**

*Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984) (emphasis added).

Essentially, duties and liabilities are intended to operate upon the human capacity for choice and control of conduct in order to inhibit and deter socially harmful conduct. When a person possessing capacity for choice and control, nevertheless breaches a duty of this type, he or she is subjected to the sanctions of criminal law, both because of the act and the failure to exercise a capacity to control behavior in conformity with the demands of society. We particularly expect such conformity when a defendant holds a high position of public trust. As a society, we rightfully scrutinize claims for special treatment where, as here, the abuse of the public trust facilitates or contributes in a significant way to the commission or concealment of the crimes.

Here, the type of undercover activities engaged in by Defendant are not so atypical or unusual as to separate him from other FBI agents doing such work, or to warrant the conclusion of post traumatic stress disorder under any recognized diagnostic guideline. The greater weight of the evidence substantiates that Defendant's limited undercover work, while commendable, did not expose him to any life threatening situations.

Moreover, the validity patterns of the MMPI 2 objective tests, and Defendant's superior professional performance over a five-year period of criminal activity, suggest conscious and volitional manipulation, as opposed to true psychopathology indicative of a significantly reduced mental capacity. In this regard, the Court finds persuasive the opinion of Harley V. Stock, Ph.D., ABPP, that Defendant's psychological test taking protocol is a reflection of an individual who consciously, and volitionally, attempted to malinger symptoms of mental illness which did not exist. Given the multiple diagnoses suggested by Defendant's experts, it would have been "impossible" for Defendant to be a special agent and have bipolar and other disorders to such an extent as would allude the notice of coworkers, superiors, or even his spouse.[11] Any claim of a causal link between the stated diagnoses and Defendant's criminal acts is, frankly, not believable when considered in context of the totality of

---

§ 5K2.15 may apply so long as the other requirements of that section are satisfied (and assuming the defendant is not entitled to a complete affirmative insanity defense pursuant to 18 U.S.C. § 17). *Id.* at 546. Likewise, if an individual is capable of appreciating the nature, quality, and wrongfulness of certain acts, but is unable to control the conduct due to reduced mental capacity, § K2.13 may also apply. *Id.*

**10.** U.S.S.G. § 5H1.3 provides that a defendant's mental and emotional condition is ordinarily not relevant in determining whether a departure is warranted. A defendant must be suffering from something greater than mere "emotional problems" to obtain a downward departure, although certain emotional conditions may be the cause of a defendant's significantly reduced mental capacity. *See McBroom,* 124 F.3d at 549.

**11.** *Opinion of Dr. Harley Stock, Transcript of* proceedings held on October 29, 1998, at page 198.

the facts and circumstances presented.[12]

## V. DEFENDANT'S OBJECTION TO THE AMOUNT OF RESTITUTION

 The PSR, at page 31, states that restitution in the amount of $422,434.53 is owed to the Federal Bureau of Investigation. That amount appears to be the arithmetic sum of all the amounts charged in the Information. Defendant objects because he lacks an ability to pay that amount. The Court concurs with Defendant's argument that, before April 24, 1996 [the effective date of the Mandatory Victims Restitution Act of 1996], district courts were required to take into account the defendant's ability to pay in assessing and imposing restitution. *See United States v. Remillong,* 55 F.3d 572 (11th Cir.1995). Under the 1996 amendments, restitution is no longer discretionary, and the Court is required to order restitution in the full amount of the victim's losses without regard to Defendant's financial situation. However, these amendments cannot be retroactively applied to crimes occurring before its effective date. *See United States v. Siegel,* 153 F.3d 1256 (11th Cir.1998). Accordingly, restitution will be ordered only for crimes occurring after April 24, 1996, since the Court finds that Defendant lacks the ability to pay restitution for crimes occurring prior to that date. The restitution amount is to be reduced by the amounts attributable to Counts One through Four, and $156,000 of the amount attributable to Count Five. Moreover, the FBI withheld over $14,000 of Defendant's accumulated vacation time to be used toward restitution. This sum is to be deducted from the total restitution owed as well. No restitution shall be required for the cost of relocating an FBI informant.

**WHEREFORE,** it is **ORDERED:**

1. Defendant's objections to the PSR are **DENIED,** except as to the restitution amount owed. In that regard, the Probation Officer is ordered to recalculate Defendant's restitution obligations consistent with this Order.

2. Defendant's requests for downward departures are **DENIED.**

**DONE AND ORDERED.**

---

**12.** Defendant claims to be a compulsive gambler. However, according to Dr. Stock, there is little forensic support for this declaration. For instance, Defendant did not "raid" any of his own family finances, such as personal bank accounts. Furthermore, he did not gamble for approximately ten years after he completed an undercover assignment in 1984.