### UNITED STATES of America

v.

### Timothy John ARNOLD.

### No. CR 213–26.

United States District Court,
S.D. Georgia,
Brunswick Division.

Jan. 7, 2014.

Order Clarifying Decision Jan. 16, 2014.

---

Frederick William Kramer, III, Brian T. Rafferty, Edward J. Tarver, James D. Durham, U.S. Attorney's Office, Savannah, GA, for United States of America.

Dan Conaway, Atlanta, GA, for Timothy John Arnold.

### ORDER

LISA GODBEY WOOD, Chief Judge.

Defendant Timothy Arnold has filed a Motion to Dismiss Due to Statute of Limitations. Dkt. Nos. 34, 48. After an independent and *de novo* review, the undersigned concurs with the Magistrate Judge's Report and Recommendation, to which Defendant has objected. Dkt. Nos. 57, 79. The basis for Defendant's objection is that the alleged conduct occurred

outside the statute of limitations, and the crimes do not constitute continuing offenses—regardless of whether they were shadowed by an overarching scheme.[1] *See* Dkt. No. 79, at 1–3.

### I. Discussion

As discussed below, only one of the charged counts is a continuing offense, but the statutes of limitation for Counts 1 through 3 have been suspended under 18 U.S.C. § 3287. Moreover, the Indictment's allegations of violations within the five-year limitations period would make dismissal premature.

#### A. *Continuing Offenses*

##### 1. Count 1: Conversion Under 18 U.S.C. § 641

■ Count 1 of the Indictment alleges that Defendant converted more than $1,000 worth of United States property from January 2006 through November 2010. Dkt. No. 1, at 6. This offense, proscribed under 18 U.S.C. § 641, has a five-year statute of limitations. *United States v. Trang Huydoan Phan,* 754 F.Supp.2d 186, 188 (D.Mass.2010). Normally, such a period begins to run when each element of the crime has occurred and the crime is complete. *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970) (quoting *Pendergast v. United States,* 317 U.S. 412, 418, 63 S.Ct. 268, 87 L.Ed. 368 (1943)). However, an offense is continuing if the substantive offense statute's language compels such a treatment, or if the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. *Id.*

---

1. Defendant does not challenge whether Counts 6 through 9 have been appropriately brought within the statute of limitations. *See* Dkt. Nos. 34, 48. His challenge pertains to only Counts 1 through 5. *See id.*

As to conversion under 18 U.S.C. § 641, courts are split on whether the underlying conduct may constitute a continuing offense. *See* Jeffrey R. Boles, *Easing the Tension Between Statutes of Limitations and the Continuing Offense Doctrine*, 7 Nw. J.L. & Soc. Pol'y 219, 239–43 (2012) (explaining the initial rejection of the doctrine's application to embezzlement and later split among federal courts). Some have found that embezzlement or conversion under § 641 may constitute a continuing offense in certain circumstances. *E.g., United States v. Smith*, 373 F.3d 561, 567–68 (4th Cir.2004) (per curiam); *United States v. George*, No. CR11–213Z, 2011 WL 4559122, at *2 (W.D.Wash. Sept. 29, 2011); *Trang Huydoan Phan*, 754 F.Supp.2d at 190; *United States v. Thompkins*, No. 1:08CR65, 2008 WL 3200629, at *2 (W.D.N.C. Aug. 5, 2008); *United States v. Gibson*, No. 08–03057–01–CR–S–DGK, 2008 WL 4838226, at *3 (W.D.Mo. Nov. 6, 2008); *United States v. Street*, No. 3:07CR181TSL–JCS, 2008 WL 4372737, at *3 (S.D.Miss. Sept. 19, 2008).

Others have rejected such treatment, regardless of the underlying indictment's language. *E.g., United States v. Yashar*, 166 F.3d 873, 876–880 (7th Cir.1999) (rejecting treatment of a similar embezzlement offense under 18 U.S.C. § 666 as a continuing offense); *United States v. Silkowski*, 32 F.3d 682, 689–90 (2d Cir.1994); *United States v. Crary*, No. CR 13–35–M–DLC, 2013 WL 6054607, at *3 (D.Mont. Nov. 15, 2013); *United States v. Tackett*, Crim. No. 11–15–ART, 2011 WL 4005347, at *4–6 (E.D.Ky. Sept. 8, 2011); *United States v. Young*, 694 F.Supp.2d 25, 29 (D.Me.2010); *United States v. Sunia*, 643 F.Supp.2d 51, 75 (D.D.C.2009); *United States v. Pease*, No. CR–07–757–PHX–DGC, 2008 WL 808683, at *3 (D.Ariz. Mar. 24, 2008); *United States v. Aubrey*, 53 F.Supp.2d 1355, 1355–56 (E.D.Tex.1999);

*United States v. Beard*, 713 F.Supp. 285, 290–91 (S.D.Ind.1989).

As to Eleventh Circuit caselaw, nothing resolves whether embezzlement under § 641 is a continuing offense. Instead, the Eleventh Circuit's application of the continuing-offense doctrine has been limited to classic manifestations of continuing offenses, such as conspiracy. *See, e.g., United States v. Cruz*, 805 F.2d 1464, 1477 (11th Cir.1986) (applying the doctrine to a conspiracy to address an evidentiary matter); *United States v. Adams*, 1 F.3d 1566, 1581–82 (11th Cir.1993) (same); *United States v. Coia*, 719 F.2d 1120, 1124–25 (11th Cir.1983) (applying the doctrine to a conspiracy to address a statute-of-limitations defense); *United States v. Gonzalez*, 921 F.2d 1530, 1547–48 (11th Cir.1991) (same); *United States v. Harriston*, 329 F.3d 779, 783 (11th Cir.2003) (per curiam) (same). Indeed, the Eleventh Circuit has noted the exceptional nature of the doctrine. *See Cruz*, 805 F.2d at 1477 n. 15 ("Unlike the continuing offense of conspiracy, most crimes occur during a brief period of time."); *United States v. Hassoun*, No. 04–60001–CR, 2007 WL 4180844, at *7 (S.D.Fla. Nov. 20, 2007) (stating that the ordinary rule for the doctrine of continuing offenses is that it "should be applied in limited circumstances"). And, the Eleventh Circuit has invoked the rule of lenity and rejected the doctrine's application where Congress intended to treat each execution of a crime as separate. *United States v. Kramer*, 73 F.3d 1067, 1072–73 n. 11 (11th Cir.1996) (reasoning that ambiguous criminal statutes should be construed in favor of the accused in concluding that "money laundering is not a continuing offense"); *see also United States v. De La Mata*, 266 F.3d 1275, 1289–90 (11th Cir. 2001) (declining to treat bank fraud as a continuing offense because each actionable execution is a discrete violation); *Hassoun*, 2007 WL 4180844, at *7–8 (treating

the offense of providing material support to terrorists as a discrete offense).

After careful consideration, the Court declines to treat Count 1 as a continuing offense for the purpose of Defendant's statute-of-limitations defense. Continuing offenses are "offenses which are not complete upon the first illegal act, but instead continue to be perpetrated over time." *United States v. Gilbert*, 136 F.3d 1451, 1453 (11th Cir.1998). As to the period for the statute of limitations, the offense's last act controls the commencement of the period. *Id.* at 1453 n. 4. Because of this effect on the limitations period, courts are admonished to construe offenses as continuous in narrow circumstances. *See De La Mata*, 266 F.3d at 1288–89. "[O]ffenses should not be considered continuing unless the explicit language of the statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing offense." *Id.* at 1289 (quoting *Toussie*, 397 U.S. at 114–15, 90 S.Ct. 858) (alterations and internal quotation marks omitted). Where the statute anticipates a violation can occur multiple times in a scheme, the scheme itself should not be treated as a continuing offense, but rather the Court should treat each manifestation of the scheme as a discrete violation. *See id.* at 1289–90; *United States v. Diaz*, No. 07–20398–CR, 2008 WL 686961, at *6 (S.D.Fla. Mar. 12, 2008) (using *De La Mata*'s treatment of bank fraud to analyze whether health care fraud is a continuing offense). "When doubt exists about the statute of limitations in a criminal case, the limitations period should be construed in favor of the defendant." *Gilbert*, 136 F.3d at 1454 (citing *United States v. Habig*, 390 U.S. 222, 226–27, 88 S.Ct. 926, 19 L.Ed.2d 1055 (1968)).

Neither the crime's nature nor § 641's language' support treating embezzlement as a continuing offense. The relevant statutory language imposes liability on:

> [w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . .

18 U.S.C. § 641. This language clearly does not meet the first part of *Toussie*'s two-prong test. *Compare* 18 U.S.C. § 3284 (stating explicitly that a debtor's concealment of assets is a continuing offense) *with* 18 U.S.C. § 641 (making no explicit statement about whether the underlying crimes are continuing or discrete). As to the second part, nothing about the nature of embezzlement compels a conclusion that the harm is continuing. The government must prove beyond a reasonable doubt:

> (1) that the money or property described in the indictment belonged to the United States or an agency thereof and had a value in excess of [$1,000] at the time alleged; (2) that the property lawfully came into the possession or care of the defendant, and the defendant fraudulently appropriated the money or property to his own use or the use of others; and (3) that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of the use of the money or property so taken.

*United States v. Burton*, 871 F.2d 1566, 1570 (11th Cir.1989) (per curiam). The language suggests that a violation occurs each time that the defendant appropriates certain property with bad intent; the offense does not speak to what comes thereafter. Indeed, in other cases, the Government has charged multiple counts

of embezzlement arising from a common scheme—implicitly countenancing the violations as discrete offenses. *See, e.g., United States v. Sullivan*, 28 F.Supp.2d 1365, 1368 (S.D.Fla.1998) (discussing the proper grouping of various counts, including five counts of embezzlement). Therefore, the Court does not treat embezzlement under § 641 as a continuing offense to which the limitations period is extended.

### 2. Count 2: Retaining Property Under 18 U.S.C. § 641

■ In contrast to Count 1, Count 2 involves a continuing offense. Count 2 alleges that Defendant "did knowingly and willfully receive and retain, with the intent to convert to his own use or gain," United States property worth over $1,000. Dkt. No. 1, at 6. The relevant statutory language imposes liability on:

> [w]hoever receives, conceals, or retains [United States property] with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted . . . .

18 U.S.C. § 641. As with Count 1, the statute does not explicitly deem retention of United States property to be a continuing offense. Nevertheless, from the offense's possessory nature, the Court concludes that "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115, 90 S.Ct. 858.

The statute distinguishes between those who receive, conceal, or retain government property. 18 U.S.C. § 641. To "receive" is "to come into possession," and therefore could be treated as a discrete violation. *Definition Receive*, Merriam–Webster Dictionary, *available at* www.merriam-webster.com/dictionary/receive. As charged in the Indictment, however, to

"retain" an item requires ongoing conduct. To "retain" is "to continue to have or use (something)." *Definition Retain*, Merriam–Webster Dictionary, *available at* www.merriam-webster.com/dictionary/retain. Retention constitutes similar-if not the same-conduct as for an offense of possession, a crime traditionally treated as continuing. *See, e.g., United States v. D'Angelo*, 819 F.2d 1062, 1065-66 (11th Cir.1987) (reasoning that showing circumstances around receipt of a firearm is not necessary to prove a possession offense). Indeed, the only appellate case addressing the issue concluded that "Congress must have assuredly intended for [concealment and retention of stolen property] to be a continuing [offense]." *United States v. Blizzard*, 27 F.3d 100, 103 (4th Cir.1994); *see also United States v. Maddox*, Crim. No. 11–0148–WS, 2011 WL 2731869, at *1 (S.D.Ala. July 14, 2011) (stating that only one appellate court has addressed the issue). District courts have likewise come to the same conclusion. *See, e.g., United States v. Tackett*, Crim. No. 11–15–ART, 2011 WL 4005347, at *5 (E.D.Ky. Sept. 8, 2011) (declining to treat embezzlement as a continuing offense while noting that "Congress must have intended retention to be treated as a continuing offense"); *United States v. Rivlin*, No. 07CR.524(SHS), 2007 WL 4276712, at *4 (S.D.N.Y. Dec. 5, 2007) (distinguishing § 641 as a continuing offense because it involves the retention of funds); *United States v. Gibson*, No. 08–03057–01–CR–S–DGK, 2008 WL 4838226, at *3 (W.D.Mo. Nov. 6, 2008) (concluding that retention of funds is a continuing offense); *United States v. Cunningham*, 902 F.Supp. 166, 168–69 (N.D.Ill.1995) (using § 641 to reason that possession of stolen mail may be a continuing offense). Therefore, the offense of retaining United States property as alleged in Count 2 may properly be treated as a continuing offense. Even if it was not a continuing offense, the

Court would still conclude that dismissal is unwarranted, as discussed below.

### 3. Count 3: Disposing Under 18 U.S.C. § 641

■ For reasons similar to treating embezzlement as a discrete offense,[2] the Court holds that Count 3, as alleged in the Indictment, constitutes a discrete offense. Count 3 alleges that Defendant unlawfully sold, conveyed, and disposed of United States property worth over $1,000 under 18 U.S.C. § 641. Dkt. No. 1, at 7. The relevant statutory language imposes liability on:

> [w]hoever ... without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof .... [3]

18 U.S.C. § 641. As with embezzlement, the statutory language does not explicitly deem selling government property a continuing offense, nor does the nature of the offense suggest that the harm continues. What happens subsequent to disposal need not be shown to establish a violation.

Therefore, for limitations purposes, the Court treats Count 3 as a discrete offense.

### 4. Counts 4 and 5: Manufacturing and Dealing Firearms Without a License

Count 4 alleges that Defendant engaged in a business of manufacturing firearms without a license, and Count 5 alleges that Defendant unlawfully dealt firearms—all in violation of 18 U.S.C. §§ 922(a)(1)(A) [4] and 923.[5] Dkt. No. 1, at 7–8. Both counts allege that the offenses took place "[f]rom in and before June 2008 through in or about March of 2011." *Id.*

Apparently, the Government concedes that the default five-year limitations period applies to these offenses. *See* Dkt. No. 38, at 28–29 (noting that the statute of limitations for Counts 4 and 5 would prevent prosecution of any charges before June 10, 2008). It notes that Counts 4 and 5's date allegations "bracket the five year limitations period of 18 U.S.C. § 3282," and that Defendant is not subject "to criminal liability for acts beyond the statute." *Id.* at 29. In turn, neither the Magistrate Judge's Report and Recommendation nor Defendant's objection to it specifically address Counts 4 and 5. *See* Dkt. Nos. 57, 79.

---

**2.** *See supra* Part I.A.1.

**3.** Although § 641's first paragraph contemplates two distinct types of actions—taking versus disposing—courts have sometimes treated the selling-conveying-disposing part of the statute the same as the embezzling-stealing-purloining-or-converting part. *See, e.g., United States v. Morris,* 284 Fed.Appx. 762, 763 (11th Cir.2008) (per curiam) (reviewing whether there was sufficient proof of the statute's elements); *United States v. Baker,* 693 F.2d 183, 185–86 (D.C.Cir.1982) (quoting both parts of the statute's first paragraph in concluding that the government need not show that the defendant knew that the property at issue was United States property); *Theft of Government Money or Property 18 U.S.C. § 641 (First Paragraph),* Pattern Jury Instructions: Eleventh Circuit, Criminal Cases with Annotations & Comments § 21 (2010). In the case at bar, however, the Government is apparently prosecuting Defendant for two distinct violations, each implicating a different part of the statute.

**4.** "It shall be unlawful ... for any person ... except a licensed ... manufacturer ... or licensed dealer, to engage in the business of ... manufacturing ... or dealing in firearms...." 18 U.S.C. § 922(a)(1)(A).

**5.** "No person shall engage in the business of ... manufacturing ... or dealing in firearms, ... or manufacturing ammunition, until he has filed an application with and received a license to do so from the Attorney General." 18 U.S.C. § 923(a).

**1314**

Likewise, the Court has found no authority for applying anything but the normal five-year limitations period to Defendant's charges in Counts 4 and 5.[6]

B. *Tolling Due to Authorization of Military Force*

 The Government contends that the statutes of limitation for Counts 1 through 3 are tolled pursuant to 18 U.S.C. § 3287 under the Wartime Suspension of Limitations Act (WSLA), which suspends the limitations period for certain offenses against the United States while the country is at war or Congress has enacted a specific authorization for use of military force. Dkt. No. 38, at 29–33. The WSLA applies to various offenses, including those "committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States." 18 U.S.C. § 3287. Clearly, Counts 1 through 3 would qualify, as they involve the acquisition, control, or disposition of United States personal property. But, the timing of tolling presents a more difficult issue.

By its terms, the amended version of 18 U.S.C. § 3287, enacted in 2008, suspends the statute of limitations for an offense when the country is at war or there is congressional authorization for use of military force–but, only "until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." Therefore, there are two distinct timing issues: (A) if and when suspension was triggered and (B) if and when hostilities have terminated.

1. Triggering of Suspension

As to the triggering issue, courts have diverged on whether the pre-amendment WSLA was ever triggered by the congres-sional authorizations for force in 2001 and 2002. Authorization for Use of Military Force Against Iraq Resolution, of 2002, Pub. L. No. 107–243, 116 Stat. 1498 (2002); Authorization for Use of Military Force, Pub. L. No. 107–40, 115 Stat. 224 (2001). The post-amendment WSLA clearly contemplates these authorizations as triggering suspension. *See* 18 U.S.C. § 3287 (suspending limitations period for applicable offenses when "Congress has enacted a specific authorization for the use of the Armed Forces"). However, some courts have found that the pre-amendment version, despite its exclusive focus on whether the country was "at war," was also triggered by the authorizations. For example, in *United States v. Prosperi,* the court developed a four-factor inquiry into whether the United States was "at war" for the purposes of § 3287 and, using that standard, concluded that the 2001 and 2002 authorizations triggered the statute. 573 F.Supp.2d 436, 449–54 (2008); *see also United States ex rel. Carter v. Halliburton Co.,* 710 F.3d 171, 178–79 (4th Cir.2013) (rejecting a formal approach to what triggers tolling under the pre-amendment statute); *United States v. BNP Paribas SA,* 884 F.Supp.2d 589, 607 (S.D.Tex.2012) (adopting Prosperi's reasoning to conclude that the authorizations put the country "at war"). In contrast, other courts have adopted a formal approach, concluding that the authorizations 'were not tantamount to congressional declarations of war under Article I of the Constitution.' *E.g., United States v. Latimer,* No. CR–11–384–R, 2012 WL 1023569, at *3 n. 5 (W.D.Okla. Mar. 27, 2012); *United States v. W. Titanium, Inc.,* Crim. No. 08–CR–4229–JLS, 2010 WL 2650224, at *3–4 (S.D.Cal. July 1, 2010).

 In the case at bar, the Court need not decide whether the authorizations trig-

**6.** *See infra* Part I.C.

gered the pre-amendment WSLA. The "application of a statute of limitations extended before the original limitations period has expired does not violate the *Ex Post Facto* Clause." *United States v. Grimes*, 142 F.3d 1342, 1351 (11th Cir. 1998). Thus:

> as to the counts [alleged in an indictment] for which the limitations period had expired prior to the effective date of the WSLA amendment, there is no suspension of the limitations period pursuant to the WSLA. However, as to the counts for which the limitations period would have lapsed after the WSLA amendment, the limitations period has been suspended pursuant to the WSLA; as there has been an authorization of military force, though no formal declaration of war.

*United States of America v. Anghaie*, No. 1:09–CR–37–SPM/AK, 2011 WL 720044, at *2 (N.D.Fla. Feb. 21, 2011); *see also United States v. Wells Fargo Bank, N.A.*, No. 12Civ.7527(JMF), 972 F.Supp.2d 593, 602, 2013 WL 5312564, at *11 (S.D.N.Y. Sept. 24, 2013) ("[T]he 2008 WSLA amendment ... applies to any claims for which the statute of limitations had not yet run at the time of its passage."); *BNP Paribas SA*, 884 F.Supp.2d at 608 (holding that a False Claim Act (FCA) offense could be brought because its six-year statute of limitations did not expire prior to the 2008 amendment, despite the offense occurring before the amendment). The WSLA in its current form was originally enacted on September 30, 2008.[7] Consolidated Security, Disaster Assistance, and Continuing Appropriations Act, Pub. L. No. 110–329, § 8117, 122 Stat. 3574 (2008). Therefore, if the five-year limitations period applies, any qualifying offense that occurred after September 30, 2003, is properly brought within the statute of limitations, which was suspended as of September 30, 2008. This encompasses all offenses alleged in the case at bar. *See* Dkt. No. 38, at 32 ("As the period October 2003 to present encompasses [Defendant's] entire tenure at the Federal Law Enforcement Training Center, any criminal conduct charged in this indictment of the type described in § 3287 would be within the limitations period, as all of that conduct arises out of Arnold's employment at FLETC, as is alleged in the introductory paragraphs, incorporated into each count."). *But see* Dkt. No. 1, at 6–7 (alleging that Counts 2 and 3 occurred "[b]efore March 22, 2011"). Unless there has been a termination of hostilities (as discussed below), the alleged timing of Counts 1 through 3 falls squarely within the period in which offenses are tolled by the 2008 amendment.

### 2. Termination of Hostilities

The foregoing discussion could be affected by the statute's condition that suspension of the limitations period ends "5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress."[8] 18 U.S.C. § 3287. If there has been a termination of hostilities, the Court must scrutinize the temporal order of when the WSLA was triggered, when hostilities were terminat-

---

**7.** Some courts identify October 14, 2008, as the date in which the statute's scope was expanded. *See, e.g., Anghaie*, 2011 WL 720044, at *2 ("On October 14, 2008, the Act was amended to expand its operation ....."). However, the bill on which that date is based contains no mention of § 3287. *See* Duncan Hunter National Defense Authorization Act for Fiscal Year 2009, Pub. L. No. 110–417, 122 Stat. 4356 (2008).

**8.** The pre-amendment version suspends the limitations period "until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." 18 U.S.C. § 3287 (2007).

ed, when violations are alleged to have occurred, and when charges were ultimately brought.

After great consideration, the Court holds that there has been neither a presidential proclamation of the termination of hostilities in Afghanistan, nor a concurrent resolution of Congress. This is the majority approach. *See Halliburton Co.,* 710 F.3d at 179–80 (concluding that the WSLA applies to any qualifying crimes since the beginning of hostilities because hostilities have not terminated under the statute's language); *United States v. Pfluger,* 685 F.3d 481, 485 (5th Cir.2012) (concluding that offenses occurring as late as May 2004 were properly charged because there had been no formal declaration of an end of hostilities); *Wells Fargo Bank, N.A.,* 972 F.Supp.2d at 610, 2013 WL 5312564, at *11 (tolling the limitations period for FCA offenses "for which the statute of limitations had not yet run at the time of [the WSLA's] passage"); *United States ex rel. Paulos v. Stryker Corp.,* No. 11–0041–CV–W–ODS, 2013 WL 2666346, at *15 (W.D.Mo. June 12, 2013) (finding that the limitations period for FCA offenses is tolled if occurring since the authorization of force in September 2001); *United States v. Loman,* No. CR–12–265–M, 2013 WL 1855876, at *1 (W.D.Okla. May 1, 2013) (holding that an FCA action's six-year limitations period had not expired prior to the 2008 amendment); *BNP Paribas SA,* 884 F.Supp.2d at 607–08 (holding in the alternative that the statute of limitations was extended before the original limitations period expired); *Latimer,* 2012 WL 1023569, at *3 (tolling the statute of limitations for offenses as of October 14, 2008); *Anghaie,* 2011 WL 720044, at *2 (implicitly determining that there has been no termination in holding that certain counts have been tolled).

The minority approach, adopted by only two district courts, is that there was a termination of hostilities in Afghanistan on December 22, 2001, when "the United States formally recognized and extended full diplomatic relations to the new government of Hamid Karzai," and in Iraq on May 1, 2003, when "President Bush, while aboard the USS *Abraham Lincoln,* proclaimed" an end to major combat operations. *Prosperi,* 573 F.Supp.2d at 455; *see also United States v. Pearson,* No. 2:09CR43–KS–MTP, 2010 WL 3120038, at *1–2 (S.D.Miss. Aug. 4, 2010) (adopting *Prosperi*'s reasoning). This approach proves problematic. For example, it liberally interprets the termination clause despite the WSLA's unambiguous language mandating that formal requirements be met, as recognized in *United States v. Grainger,* 346 U.S. 235, 73 S.Ct. 1069, 97 L.Ed. 1575 (1953). *See Pfluger,* 685 F.3d at 485. Further, its analysis of the termination of hostilities in Afghanistan overlooks the 2001 authorization bill's use of broad language, which was "clearly intended by Congress to entail more than the Afghan state." Paul D. Swanson, Note, *Limitless Limitations: How War Overwhelms Criminal Statutes of Limitations,* 97 Cornell L.Rev. 1557, 1582 (2012). And, it ignores a central premise of Justice O'Connor's opinion in *Hamdi v. Rumsfeld* that "[a]ctive combat operations against Taliban fighters apparently are ongoing in Afghanistan." 542 U.S. 507, 521, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004); *see also* Swanson, at 1577 (describing *Prosperi*'s holding as "absurd" and "run[ning] against precedent"). Indeed, rather than wind down after the supposed dates of the termination of hostilities, the conflicts escalated. *See* Swanson, at 1582 (citing the financial and human costs of the conflicts since 2003).

In light of these observations regarding *Prosperi*'s analysis and the voluminous au-

thority holding that there has been no termination of hostilities pursuant to § 3287—at least in Afghanistan—the Court adopts the majority approach. As a result, the Court's analysis in Part I.B.I applies, and Defendant's statute-of-limitations challenge fails.

### C. *Merits of Dismissal*

█ Even assuming Counts 1 through 3 involved discrete offenses unaffected by the WSLA, dismissal would not be the proper remedy at this stage. Where conduct has been charged in a single count, "the defendant may be convicted of the offense if any of the alleged acts occurred within five years of the indictment, even if prosecution for the others would be barred by the statute of limitations." *United States v. Gray*, Crim. No. 11–13, 2012 WL 1554649, at *3 (W.D.Pa. May 1, 2012). At trial, assuming that the statute of limitations could serve as a valid defense, the temporal scope of violations in Counts 1 through 5 of the Indictment suggests that the Government could still present violations occurring within the five-year limitations period. Therefore, Defendant's motion to dismiss is without merit.

## II. Conclusion

For the aforementioned reasons, Defendant's objection is without merit and **OVERRULED.** Dkt. No. 79. The Magistrate Judge's Report and Recommendation is adopted as the opinion of the Court. Dkt. No. 57. Defendant's Motion to Dismiss Due to Statute of Limitations is **DE-NIED.** Dkt. Nos. 34, 48.

### *CLARIFYING ORDER*

█ This Order clarifies the Court's Order on January 7, 2014, Dkt. No. 85, which denied Defendant's Motion to Dismiss Due to Statute of Limitations, Dkt. No. 34. The Court now makes clear that

in adopting the Magistrate Judge's Report and Recommendation, the Court embraced only the Report and Recommendation's conclusion, not its statement of the law. More specifically, the Court rejects the Report and Recommendation's declaration that Defendant bears the burden to prove that the charged offenses did not occur within the applicable statutes of limitation. Dkt. No. 57, at 2 (citing *Smith v. United States*, —— U.S. ——, ——, 133 S.Ct. 714, 720, 184 L.Ed.2d 570 (2013)). This statement was contrary to the law. *See Smith*, 133 S.Ct. at 721 ("[T]he Government must prove the time of the conspiracy offense if a statute-of-limitations defense is raised." (citing *Grunewald v. United States*, 353 U.S. 391, 396, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957))); *United States v. Therm–All, Inc.*, 373 F.3d 625, 631 (5th Cir.2004) (holding that the government satisfied its burden to show that a conspiracy occurred within the applicable statute of limitations); *United States v. Walsh*, 700 F.2d 846, 851 (2d Cir.1983) ("To establish [the defendant's] violation the government had to prove that [the defendant] committed at least two predicate offenses, one of which occurred within the federal five-year statute of limitations for noncapital offenses." (citations omitted)); *United States v. Hankin*, 607 F.2d 611, 612 (3d Cir.1979) ("The Government has the burden of proof that the prosecution was instituted within the applicable statute of limitations."); *Az Din v. United States*, 232 F.2d 283, 287 (9th Cir. 1956) (stating that the government bears the burden to prove that an offense occurred within the applicable statute of limitations under 18 U.S.C. § 3282); *United States v. Ngige*, No. 2:12–cr–00098–JAW, 2013 WL 950689, at *2 (D.Me. Mar. 12, 2013) (clarifying that *Smith* held that "combining a statute of limitations defense with a withdrawal defense 'does not place upon the prosecution a constitutional responsibility to prove that the Defendant

did not withdraw'" (citation and alterations omitted)); 1 Stephen E. Arthur & Robert S. Hunter, *Federal Trial Handbook: Criminal* § 20:5 (4th ed. 2013) ("In a criminal case the prosecution must affirmatively prove the commission of the offense charged in the information or indictment within the period limited by statute for bringing of prosecution therefor."); 2 Paul H. Robinson, *Criminal Law Defenses* § 202 (2013) ("The burden of production for a defense under a statute of limitations is generally on the state. The burden of persuasion is nearly always on the state, beyond a reasonable doubt." (footnotes omitted)). *Compare* Dkt. No. 57, at 2 ("As with other affirmative defenses, the burden is on the defendant to prove this defense.") *with* Dkt. No. 85, at 20 ("At trial ... the Government could still present violations occurring within the five-year limitations period."). The burden rests with the Government to prove that the charged offenses fall within the applicable statutes of limitation.

### *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

JAMES E. GRAHAM, United States Magistrate Judge.

Defendant Timothy John Arnold ("Arnold") has been charged with: theft and conversion of Government property, in violation of 18 U.S.C. § 641; the unlicensed manufacture of and dealing in firearms, in violation of 18 U.S.C. § 922(a)(1)(A); interstate travel to engage in the unlicensed manufacture of and dealing in firearms, in violation of 18 U.S.C. § 924(n); and interstate transport of illegally acquired firearms, in violation of 18 U.S.C. § 922(a)(3). Arnold filed a Motion to Dismiss due to

Statute of Limitations, to which the Government responded.

Arnold contends that the indictment against him should be dismissed because the conduct alleged in the indictment occurred more than five (5) years before the filing of the indictment. Arnold also contends that counts 2 and 3 of the indictment do not specify when the alleged conduct occurred, only that it was before March 22, 2011. Thus, Arnold asserts, the applicable statute of limitations period bars the prosecution against him. The Government alleges that whether Arnold committed criminal acts within the limitations period is a question of fact for the jury, and, as such, is an affirmative defense for trial.

Section 3282 of Title 18 of the United States Code provides a "catchall" statute of limitations period for non-capital offenses. *United States v. Trainor*, 376 F.3d 1325, 1329 (11th Cir.2004). That section states: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). "The Government need not allege the time of the offense in the indictment, and it is up to the defendant to raise the limitations defense[.]" *Smith v. United States*, —— U.S. ——, 133 S.Ct. 714, 720, 184 L.Ed.2d 570 (2013) (internal citations omitted). A statute of limitations defense is an affirmative defense. As with other affirmative defenses, the burden is on the defendant to prove this defense. *Id.*

Without discussing the Wartime Suspension of Limitations [1] and its applicability to

---

1. "When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to any offense (1) in-

Arnold's criminal charges, it appears that the Government's prosecution of Arnold's alleged criminal activity falls within the five (5) year limitations period of section 3282. The earliest date alleged in the indictment is January 2006, but that count states that the offenses charged continued through November 2010. (Doc. No. 1, p. 6). The Government's indictment was filed on June 10, 2013. (Doc. No. 1). Arnold has not shown that his alleged crimes were completed on or before June 9, 2008, and his Motion should be **DENIED.** However, this recommendation has no bearing on whether Arnold can bring a statute of limitations defense at trial. Rather, this recommendation pertains to Arnold's Motion to Dismiss the indictment against him.

**SO REPORTED** and **RECOMMENDED,** this 5th day of December, 2013.

volving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancellation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress. For purposes of applying such definitions in this section, the term 'war' includes a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b))." 18 U.S.C. § 3287.